### 7136

### HALLUMS v. SOUTHERN RY.

RAILROADS—MASTER AND SERVANT—CONSTITUTIONAL LAW.—A SECTION HAND of a commercial railroad handling iron rails is within the meaning of the clause "every employee of any railroad corporation," in Art. IX, Sec. 15, of the Constitution, and thereunder the master is liable for injury to a section hand caused by the confusion arising from the opposite calls of two men having the right to direct the services of the section hands in carrying rails.

Before HYDRICK, J., Pickens, September term, 1908. Affirmed.

Action by Plumer Hallums against Southern Railway Company. From judgment for plaintiff, defendant appeals.

*Mr. J. P. Carey,* for appellant, cites: *On constitutional question:* 88 Miss., 314; 67 N. W. R., 804; 8 L. R. A., 419; 36 Ia., 52; 12 N. W. R., 763; 78 N. W. R., 800; 59 Am. R., 456; 10 Am. & Eng. Ann. Cas., 1113; 56 S. C., 446; 51 S. C., 96; 39 S. C., 510; 71 S. C., 53.

*Messrs. Morgan & Mauldin,* contra, cite: *No negligence on part of plaintiff:* 56 S. C., 454. *Case falls under art. IX, sec. 15, Con.:* 56 S. C., 454; 37 S. C., 199, 377; 58 S. C., 144.

April 9, 1909. The opinion of the Court was delivered by

MR. JUSTICE JONES. On the 17th day of April, 1906, near Norris, in Pickens county, plaintiff was in the employment of defendant as a member of a squad of section hands, under control of J. H. Pittman as section boss, and was engaged in moving heavy iron rails from one side of the track to the other, and when throwing down one of the rails one end bounced back and struck plaintiff on the leg, breaking it. This action was to recover damages for such injury, and resulted in a judgment for plaintiff for four hundred and fifty dollars.

The complaint alleged that George Brown and Tom Austin had been appointed "callers," and were acting as such, and that plaintiff and other persons working with him were governed and directed in the handling of the rails by said callers, especially as to when to throw or let go said rails, and their authority to so direct was recognized or acquiesced in by the said Pittman, the plaintiff and defend-

ant, and those working with him, and the plaintiff at this particular time, was required to obey Tom Austin.

The complaint further alleged that plaintiff and several others had hold of one end of the iron rail, with Tom Austin as caller at that end, and that several others had hold at the other end, with George Brown as caller there; that George Brown gave the order to "throw down" the rail, while Tom Austin gave order to "hold steady;" and that when the end controlled by Brown was thrown that caused the plaintiff and those at the end controlled by Austin to drop the rail, and, the other end being thrown, caused the Austin end to fly back and strike plaintiff; and in short, that it was negligence of the defendant to subject plaintiff to the hazard and danger usually resulting from the confusion of orders by those authorized to direct the services of plaintiff.

The defendant, besides a general denial, plead that the injury was the result of plaintiff's negligence, and was the result of the ordinary risks of his employment.

Both on the motion for nonsuit and for a new trial defendant contended: (1) That there was no evidence tending to show negligence of defendant. (2) That the injury received by plaintiff was the result of the acts of fellow-servants in the same employment or labor. (3) That the acts of those removing the rails were not done under the immediate orders of a superior officer or agent having the right to direct the services of plaintiff and those working with him. These questions are renewed here by the exceptions.

The Court instructed the jury that article IX, section 15, of the Constitution, nullified the doctrine of assumption of risks in certain particulars, named in the section, and that if plaintiff was injured by the negligence of a person having the right to control and direct his services, he could not be held to have assumed such risk; and that if they were satisfied that Pittman had general charge of the work, and appointed these callers, or if the employees of the company

themselves agreed that these men should be callers, and it was their duty to obey the order of the callers, and plaintiff was injured by reason of the negligence of the callers, plaintiff was entitled to recover.

Under exceptions to this charge it is contended that it was error to hold that article IX, section 15, of the Constitution, applied to a gang of hands removing railway irons, and in no way connected with the operation of trains.

We will first notice this last question. We are of the opinion that a section hand, in the employment of a railroad corporation, is within the meaning of the words "every employee of any railroad corporation," provided for in article IX, section 15, of the Constitution. The section reads as follows:

"Every employee of any railroad corporation shall have the same rights and remedies for any injury suffered by him from the acts or omissions of said corporations or its employees as are allowed by law to other persons not employees, when the injury results from the negligence of a superior agent or officer, or of a person having a right to control or direct the services of a party injured; and also when the injury results from the negligence of a fellow-servant engaged in another department of labor from that of the party injured, or of a fellow servant on another train of cars, or one engaged about a different piece of work. Knowledge by any employee injured of the defective or unsafe character or condition of any machinery, ways or appliances shall be no defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars or engines voluntarily operated by them. When death ensues from any injury to employees, the legal or personal representatives of the person injured shall have the same right and remedies as are allowed by law to such representatives of other persons. Any contract or agreement expressed or implied, made by any employee to wave the benefit of this section shall be null and void;

and this section shall not be construed to deprive any employee of a corporation, or his legal or personal representative, of any remedy or right that he now has by the law of the land. The General Assembly may extend the remedies herein provided for to any other class of employees."

It is not within the question submittted to us to consider whether the section in any partcular violates the fourteenth amendment of the Federal Constitution; nor whether the term "railroad corporation" is limited to commercial railroads or those engaged in the transportation of freight and passengers; nor whether a street railway is included; nor whether railways operated by an industrial association, joint stock company or corporation for its own private use, are not included. These topics are interestingly noticed in 8 Am. & E. Annotated Cases, 1086, 10 Am. & E. Annotated Cases, 1118, note 15 L. R. A. (N. S.), 479. In this case the plaintiff was an employee of a strictly commercial railroad, and the question is whether the Constitution modifies the common law doctrine of fellow-servants in respect to a section man of such a railroad. The Supreme Court of Mississippi, in the case of *Bradford Construction Co.* v. *Heflin,* 88 Miss., 314, 8 Am. & E. Ann. Cases, 1036, construing a similar provision in the Mississippi Constitution, held that it meant only such employees as were imperiled by the hazardous nature of the business of operating railroad trains. Like rulings were made in Iowa and Minnesota under employer's liability statutes in terms as general. *Deppe* v. *Chicago,* 36 Iowa, 52; *Johnson* v. *St. Paul etc. R. R. Co.,* 43 Minn., 222, 8 L. R. A., 419.

These decisions are manifestly in conflict with the natural meaning of the language of the Constitution and statute, and the construction was confessedly adopted to avoid a supposed conflict with the equality clause of the Federal Constitution. Without further reference to decisions from other jurisdictions, we content ourselves with citing the case

of *Callahan* v. *St. Louis etc. R. R. Co.*, 170 Mo., 473, 94 Am. St. Rep., 746, affirmed by the United States Supreme Court, 24 Sup. Ct. Rep., 857, under the authority of *Tullis* v. *Lake Erie etc. R. R. Co.*, 20 Sup. Ct. Rep., 136. The Missouri statute provided that every railroad corporation operating a railroad shall be liable for all damages sustained by any agent or servant thereof, while engaged in the work of operating such road, by reason of the negligence of any other servant or agent thereof. It was held that the right of recovery was not limited to injuries inflicted by negligence of a fellow-servant while actually moving trains, and that the term "operating a railroad" includes all work directly necessary for the running of trains over a track, including section hands engaged in repairing the track over which the trains must run. This is a very reasonable view, as it can not be doubted that the efficient operation of a railroad and the safety of the traveling public depend very largely and directly upon the ceaseless vigilance of the section men. Their work entails many perils peculiar to it as an essential factor in the movement of trains. It would be a strange result if an enactment, designed to help railroad employees, should be held to exclude this important class charged with the duty of making the track secure, and that, too, in the absence of any intimation of such intent in the language of the enactment. On this point the case of *Rutherford* v. *Southern Railway*, 56 S. C., 448, 35 S. E., 136, and the case of *Bodie* v. *Southern Railway Co.*, 61 S. C., 468, 39 S. E., 715, are conclusive, and we are satisfied with the ruling in these cases. Both cases held that section men, as employees of a railroad company, were within the provision of art. IX, sec. 15, of the Constitution. In Bodie's case the section master was injured while engaged with his men in carrying rails up an embankment, for the purpose of loading them upon his dump car for removal to another place, the injury resulting from negligence of the railroad company to furnish sufficient force

of hands to lift the rails safely.   In Rutherford's case a
section hand was injured while engaged with other em-
ployees in loading flat cars slowly moving along the track
with iron or steel rails, the injury resulting from the failure
of Lune Walker, who was caller for the gang, to counter-
mand the order to throw the rails on the car in time for
plaintiff to escape from the falling rail.   The Court held
that it was immaterial whether Walker had been appointed
caller by Summer as section master, having general super-
vision of the work, or was selected by the other hands, who
voluntarily subjected themselves to his order, and that, in
either case, Walker would be a person having a right to
control or direct the services of the plaintiff in the particular
work in which he was engaged when injured.

The instructions given were in accordance with the law as
declared in the Rutherford case.

It remains to consider whether there was any evidence
tending to support the verdict.

As shown in the Rutherford case, an employee of a rail-
road company has the same rights and remedies as a person
not an employee, in three instances: 1. "Where the injury
results from the negligence of a superior officer or agent;
(2) Where it results from the negligence of a person having
a right to control or direct the services of the party injured;
(3) When it results from the negligence of a fellow-servant
engaged in another department of labor, or on another train
of cars, or one engaged in a different piece of work.   In all
other cases not falling under either of the classes above
indicated, the law upon the subject of the defense of fellow-
servant remains the same as it was before."

It is conceded that the case does not fall within the first
and third classes.   Does the case fall within the second
class?

On this point George Brown testified that he was one of
a squad of section hands moving the rails and was appointed
caller at one end of the rail by Captain Pittman, the section

20—82

master, and that it was the duty of the men to obey what he said; that Tom Austin was appointed caller at the other end; that about fifteen hands had hold of the rail, and the rail was getting heavy; that Austin said "steady," and he, Brown, said "drop down;" that the boys threw it too quickly and the rail flew back and struck plaintiff. The plaintiff testified that both Austin and Brown had been giving the orders to "throw away" that day, previous to the injury; that he was at Austin's end and obeyed his orders; that Brown called "throw away" and Austin said "steady," and he paid attention to his call. All the witnesses agreed that Austin was caller at one end of the rail and Brown at the other, but most of the witnesses testified that it was Brown's duty to call "deal," or "pick up," when the rail was to be lifted; and that it was Austin's duty to call "throw away" when the rail was to be dropped. Pittman, the section master, testified that he appointed no one caller; that it was the custom of the section hands to choose a caller, and that they had chosen Austin, and he was the man they should have obeyed; and that he, Pittman, was not present at the time of the accident.

The testimony tends to show that the injury was the result of the confusion arising from the opposite calls of two men having the right to direct the services of plaintiff in the matter of moving rails. The case was properly submitted to the jury, and for the same reason there was no error of law in refusing a new trial.

The judgment of the Circuit Court is affirmed.