## BECKER v. A. C. L. R. CO.

### (121 S. E., 476)

1  MASTER AND SERVANT—PROOF OF RISK ASSUMED CONFINED TO SPECIFICATIONS PLEADED.—An employer, pleading assumption of risk, must confine his proof of the risk assumed to the specification pleaded.

2. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE OF EMPLOYEE ADJUSTING BELT TO MOVING PULLEY HELD FOR JURY.—In an action for injuries occurring to an employee while he was attempting to adjust a belt to a moving pulley, whether employee was guilty of contributory negligence *held* for the jury.

3. MASTER AND SERVANT—EVIDENCE AS TO SIZE AND CAPACITY OF ENGINE HELD ADMISSIBLE UNDER PLEADING.—In an action for injuries to an employee while he was attempting to adjust a belt to a moving pulley, evidence of the size and capacity of the engine and the foundation on which it rested *held* relevant, under a complaint alleging generally failure to °furnish a reasonably safe place and reasonably safe and suitable instrumentalities.

4. CONSTITUTIONAL LAW—CONSTITUTIONAL PROVISION AS TO DEFENSES OF FELLOW SERVANT AND ASSUMPTION OF RISK HELD SELF-EXECUTING.—Const. 1895, Art. 9, §§ 15, 21, purporting to abolish in cases of railroad employment, the defense of fellow servant and assumption of risk, *held* self-executing.

5. CONSTITUTIONAL LAW—WHEN PROVISION "SELF-EXECUTING."—A constitutional provision is "self-executing," when no legislation is required to give effect to it.

6. CONSTITUTIONAL LAW—MASTER AND SERVANT—CONSTITUTIONAL PROVISION AS TO DEFENSES OF FELLOW SERVANT AND ASSUMPTION OF RISK HELD NOT REPUGNANT TO FEDERAL CONSTITUTION.—A contention that, unless Const. S. C. 1895, Art. 9, § 15, purporting to abolish in cases of railroad employment the defenses of fellow servant and assumption of risk, is construed as applicable only to employees engaged in actual train operation or subject to dangers directly connected therewith, it is repugnant to Fourteenth Amendment of the Federal Constitution, *held* without merit.

NOTE: On constitutionality of statute abrogating the fellow servant rule, see note in 12 L. R. A. (N. S.), 1040, and 47 L. R. A. (N. S.), 84.

On standard of master's duty with respect to selection between different styles or makes of appliances, see note in 6 L. R. A. (N. S.), 492.

Before Rice, J., Charleston, 1923.    Affirmed.

Action by B. H. Becker against Atlantic Coast Line Railroad Company.    Judgment for plaintiff and defendant appeals.

*Messrs. Rutledge, Hyde & Mann* and *R. M. Figg, Jr.,* for appellant, cite: *Proof of negligence other than alleged prejudicial:* 89 S. C., 378; 86 S. C., 229; 47 S. C., 28; 45 S. C., 278. *When assumption of risk is question for the jury:* 52 S. C., 443; 55 S. C., 102. *Servant voluntarily operating defective machine with knowledge assumes the risk:* 55 S. C., 102; 52 S. C., 443; 61 S. C., 468; 21 S. C., 541. *Defense may be relied on though not pleaded:* 21 S. C., 541; 73 S. C., 503. *Employee cannot recover without showing complaint after discovery of defect:* 18 R. C. L., 651; 42 Neb., 739; 49 N. Y., 521; 40 Mich. 420. *Construction of Sec. 15, Article 9, Const. S. C.,* 12 L. R. A. (N. S.), 1047-B; 62 L. R. A., 407; 88 Miss., 314; 81 Miss., 507; 73 S. C., 503; 82 S. C., 299; 127 U. S., 205; 171 Ind., 612; 228 U. S., 559; 218 U. S., 36; 20 Iowa, 347; 38 Io., 592; 67 Io., 75; 40 Minn., 249; 43 Minn., 322; 65 Minn., 69; 33 Kan., 298; 25 Kan., 235; 64 Io., 603; 171 Ind., 612; 10 Ann., Cas. 1115.

*Messrs. Logan & Grace* and *John I. Cosgrove,* for respondent, cite: *Testimony for defendant will be considered on refusal of motion for nonsuit:* 110 S. C., 566. *Promise by Master to remedy defect rebuts assumption of risk:* 53 S. C., 363; 112 S. C., 541; 113 S. E., 348; 121 S. C., 133; 116 S. C., 305; 252 Fed., 540. *Constitutional provision sustained:* 219 U. S., 35; 228 U. S., 559; 157 U. S., 209; 18 R. C. L., 835; 277 Fed., 232; 207 U. S., 492; 223 U. S., 1; 169 U. S., 366; 81 S. C., 71; 92 S. C., 14; 68 S. C., 339; 93 S. C., 119; 55 S. C., 152; 63 S. C., 425; 42 S. E., 601; 12 S. E., 812; 16 S. E., 939; 2 N. W., 69. *Section construed and adopted by the South Carolina Courts:* 52 S. C., 438; 61 S. C., 470; 60 S. C., 18; 68 S. C., 55; 75

S. C., 303; 75 S. C., 68; 80 S. C., 539; 80 S. C., 531; 82 S. C., 299; 86 S. C., 300; 98 S. C., 125; 105 S. C., 471; 112 S. C., 47.

February 11, 1924.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for damages on account of personal injuries sustained by the plaintiff, an employee of the defendant, at a sawmill operated by it, on August 23, 1921, caused as alleged by the negligence and willfulness of the defendant. A jury trial resulted in a verdict of $8,750 in favor of the plaintiff, from the judgment entered upon which the defendant appeals.

The circumstances of the injury are thus very fairly and clearly stated by counsel for the respondent:

"On the day of the accident a belt operated by a stationary steam engine slipped off its pulley, and plaintiff received the injuries complained of in attempting to replace it. The mill or repair shop was located in defendant's yards in the city of Charleston, in which regular repair work was done. This shop was under the supervision and control of the above-named Knox. Therein was installed a stationary steam engine which was used in the operation and running of belts in connection with the saw, grindstone, and other appliances. The shafting was about 47 feet in length and operated ten pulleys, power for all of which was supplied by the stationary steam engine referred to. Plaintiff's duties were to work about the shop, and if a belt broke, or came off, or needed repairing, he did it under the orders of Mr. Knox. The engine had no governor on it. When first installed, it was controlled by what is known as a 'globe valve,' but this valve subsequently started to leak, and, instead of replacing it with a new globe valve, the defendants installed what is known as an 'air lever valve.' The difference between a globe valve and an air lever valve is that with the globe valve you can open and close it

gradually, so that the engine can be started and stopped as gradually as you want to; and in addition, because of the position in which it is placed on the pipe leading from the boiler to the engine, the control thereof is not subject to becoming heated from proximity to the pipe. On the other hand, an air lever valve is one that is never used to control steam; but, as its name indicates, it is used to control air or water, and according to the testimony of all the witnesses in the case, a valve of that kind had never been seen in use on a steam engine; it was the kind of valve usually found on air brakes or a water line. Moreover, the control lever almost rested on the pipe leading from the boiler to the engine, and thus became extremely hot.

"As stated, some time after the engine had been installed, with the globe valve thereon, it started to leak. Complaint was made by plaintiff to Knox, his superior, and thereafter, about 5 or 6 months before the accident, the air lever valve was installed. This air valve is controlled by a lever, which works back and forth, and this lever was close to the steam pipe, so that the handle thereof became very hot, and consequently had to be opened quickly to prevent the operator's hand being burned. This fact, coupled with the unsuitability of the valve itself for the purpose for which it was supplied, caused the engine to start off with a jerk, instead of starting gradually, as would have been the case with the regulation and suitable globe valve. Requisition was made by the plaintiff for a globe valve, but he never got one. He was told, however, by his superior, Mr. Knox, that he would get one, and Knox ordered the air valve put on the engine, and told plaintiff to continue to work there. The globe valve works with a very long stem and wheel, so that you can regulate it to a hair. The air valve works with a lever, but the opening is too large to allow the engine to start slowly. They are used on air lines and water lines, where you want a direct opening. The action of the air valve was to cause the engine to start at full speed with a jerk. The air valve

was put on between five and six months before plaintiff got hurt, and during all that time Mr. Knox promised to get a new globe valve, but did not do it.

"On the day of the accident, a belt having run off one of the pulleys, plaintiff took the belt and put it back on the pulley as far as he could, pulling the pulley around with his hand, and, when he could not get the belt any further on the pulley, told the fireman to start the engine, as it was necessary to give the pulley a turn to slip the belt on. But the engine, on account of the defective and unsuitable air valve, when the lever was pulled, went off with a jerk and threw plaintiff against a post, catching his arm and severely wounding and injuring it. When plaintiff went to put the belt on, the engine was stopped and not in motion. It was stationary and dead still. He had to adjust the belt on the shaft before he brought the belt down to the engine, and had only gotten the belt two-thirds on the pulley before the engine started up. It was necessary to start the engine to complete the operation, because he could not get it on otherwise, and had repeatedly done it that way before."

The defendant made a motion for a nonsuit and a motion for a directed verdict, both of which were refused. The exceptions assign error in such refusals, in the admission of certain evidence, and in certain charges and refusals to charge, which will be separately considered.

*Motion for Nonsuit.*—The motion was made upon the ground of assumption of risk, in that the evidence showed:

"That the plaintiff had voluntarily remained in the service of the defendant, working the engine referred to, for such a length of time after knowledge of the alleged defect in the engine, and after his complaint thereof, and after the alleged promise of the defendant to remedy the same, as to constitute in law a waiver of such defect."

The Court has frequently held that the defense of assumption of risk is an affirmative one, and must be pleaded.

*Betchman v. Railroad Co.,* 75 S. C., 68; 55 S. E., 140. From this it follows that the defendant is confined to the specifications of that defense which he does plead. The defendant in its answer here pleads assumption of risk upon a different ground from that upon which the motion was made. The "case" states:

"The defendant further set up the assumption of risk by the plaintiff; that is to say, the risk of replacing a belt upon a moving pulley, and that such risk was obvious and was so assumed by the plaintiff,"

an entirely different proposition from that now relied upon.

*Motion for a Directed Verdict.*—The motion was made upon two grounds: (1) Assumption of risk, as stated in the motion for nonsuit; (2) contributory negligence in the management of the machine.

The first ground is disposed of by the ruling upon the motion for nonsuit. The second could not have been sustained, for the reason that the inference to be drawn from the evidence was disputable, a matter for the determination of the jury. We cannot say as a matter of law that the act of attempting to adjust a belt to a moving pulley is *per se* a negligent act; it may have been, under certain circumstances, the only available and proper method.

*Objection to Testimony.*—1. The plaintiff testified that:

"This engine was put down on an ordinary common bed, thinks 4x8, right down on the ground; one end right up against the boiler; a stake driven on one side, with a post to the roof, to hold engine in position. This engine was a little overpowered, that is, the load was too heavy. There were ten pulleys and nine boxes and nine belts."

An exception raises the objection that there was no allegation or specification in the complaint as to the capacity of the engine, and for that reason the testimony was irrelevant and incompetent. The record shows that the testimony was received without objection. After it had been

received the question was asked: "And this 4 H. P. engine was supposed to run that?" To this question the objection was directed, and that upon the ground that the defendant had not been put on notice that the engine was overpowered, not upon the ground, now urged, that the complaint contains no specification of negligence in this respect.

2. A witness for the plaintiff testified that:

"The engine was very poorly fixed on the foundation, which was not concrete; just a wooden foundation, small timber; the engine was bolted on timbers; whenever the belt jumped off, the engine would jump all over the ground."

An exception raises the same objection to this testimony. The objection interposed, after the testimony had been received, was that it was irrelevant, not that it was irresponsive to a specification in the complaint. The testimony cannot be considered irrelevant, in view of the general allegation in the complaint that the defendant had failed to furnish a reasonably safe place and reasonably safe and suitable instrumentalities.

*The Judge's Charge.*—By exceptions to the refusal of certain requests to charge and to certain charges of the Court, the defendant insists upon the following propositions: (1) That Article 9, § 15, of the Constitution of 1895, is not self-executing, and has never been made so by any act of the General Assembly, and was not, therefore, applicable to the case; (2) that unless Article 9, § 15, of the Constitution of 1895 be construed as applicable only to employees engaged in actual train operation or subject to dangers directly connected therewith, it is repugnant to the Fourteenth Amendment to the Constitution of the United States.

*As to the first proposition.*—The section purports to abolish in certain cases the defenses of fellow servant and assumption of risk in favor of all railroad employees. Section 21 of the same Article is thus printed in the Code of 1922:

*"Provisions Not Self-Executing.*—The General Assembly shall enforce the provisions of this article by appropriate legislation."

The subtitle, the catch-words above italicized, is not a part of the Constitution, but the words of the codifier. All that Section 21 was intended to mean is that, where necessary, legislation should be enacted. "A constitutional provision is self-executing, when no legislation is necessary to give effect to it." 6 R. C. L., 57. This is manifestly the case here.

*As to the second proposition.*—The question is absolutely concluded against the appellant by the case of *Louisville & N. R. Co. v. Melton,* 218 U. S., 36; 30 Sup. Ct., 676; 54 L. Ed., 921; 47 L. R. A. (N. S.), 84. See, also, *Railroad Co. v. Turnipseed,* 219 U. S., 35; 31 Sup. Ct., 136; 55 L. Ed., 78; 32 L. R. A. (N. S.), 226, Ann. Cas., 1912A, 463. *Mondou v. Railroad Co.,* 223 U. S., 1; 32 Sup. Ct., 169; 56 L. Ed., 327; 38 L. R. A. (N. S.), 44. *Hallums v. Railroad Co.,* 82 S. C., 299; 64 S. E., 147; 17 Ann. Cas., 511.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

Messrs. Justices Watts, Fraser, and Marion concur. Mr. Chief Justice Gary did not participate.