MEDLIN v. VANDERBILT *ET AL.*

(130 S. E., 893)

1. RELEASE—REFUSAL OF OFFER OVER TELEPHONE HELD TO OBVIATE NECESSITY OF TENDER.—Repeated announcement of defendants' attorney that he stood on release signed by plaintiff, and would not accept return of money paid therefor, *held* to obviate necessity of tender as condition to plaintiff's recovery.

2. APPEAL AND ERROR—REFUSAL TO CHARGE AS TO ASSUMPTION OF RISK ONLY AS CONTAINED IN CHARGE ON PLEADINGS NOT ERROR.—Error cannot be predicated on refusal of Court to charge as to assumption of risk in regard to contributory negligence, where he stated that he would charge on the pleadings, and did so, and there was no exception to charge in that respect.

3. APPEAL AND ERROR—EXCEPTIONS, BASED ON INSUFFICIENCY OF TESTIMONY, SUSCEPTIBLE OF MORE THAN ONE INFERENCE, PROPERLY OVERRULED.—Exceptions, based upon insufficiency of evidence, will be overruled, when testimony upon which they rested was susceptible of more than one inference.

4. APPEAL AND ERROR—EXCEPTION, BASED ON INSUFFICIENT EVIDENCE FOR VERDICT, PROPERLY OVERRULED, WHERE THERE WAS NO MOTION FOR A NEW TRIAL.—Exception, because verdict is contrary to evidence, properly overruled, where record does not disclose there was motion for a new trial made.

5. CONTRACTS—PARTY WHO SIGNS PAPER IS BOUND BY IT, NOT BEING RELIEVED BY FAILURE TO HAVE READ IT.—Rule that person who signs paper is bound by it, and failure to read it will not relieve party of consequences, is subject to certain exceptions.

6. RELEASE—VALIDITY OF RELEASE FOR LIABILITY FOR INJURIES HELD FOR JURY.—Validity of release for liability for injuries, signed when claimant and his wife were in dire straits, *held* properly submitted to jury, under evidence also showing that they were both ignorant.

7. MASTER AND SERVANT—ASSUMPTION OF RISK MUST BE PLEADED.—Assumption of risk is an affirmative defense, and must be pleaded.

8. MASTER AND SERVANT—INSTRUCTIONS ON CONTRIBUTORY NEGLIGENCE HELD TO HAVE SUBMITTED CASE UNDER ISSUES RAISED.—In action for injury received when putting belt on pulley wheel, instructions, setting up claim of defendant that plaintiff had notice of proper method of replacing belts, and setting up elements of defense of contributory negligence, *held* to have properly submitted case under issues raised.

Before WHALEY, J., Richland, 1924.    Affirmed.

Action by George F. Medlin against Arthur T. Vanderbilt and another, as receivers of the Southern Cotton Oil Company, and the Southern Cotton Oil Company. From a verdict for plaintiff, defendants appeal.

*Messrs. Thomas & Lumpkin,* for appellants, cite: *Consideration to be tendered back before attacking release:* 122 S. E., 670; 101 S. C., 34; 84 S. C., 41; 61 S. C., 448; 56 S. C., 508. *Ordinary risks need not be pleaded when contributory negligence pleaded:* 75 S. C., 71; 38 S. C., 213. *Assumption of risk:* 107 S. C., 15; 89 S. C., 390; 85 S. C., 372; 84 S. C., 391; 72 S. C., 243. *Contracts of illiterates:* 127 S. E., 270; 124 S. C., 211; 58 S. C., 56. *Inadequacy of consideration for release:* 113 S. C., 269. *Contracts signed without reading:* 127 S. E., 213; 77 S. C., 192.

*Messrs. John E. Edens and J. Hughes Cooper,* for respondent, cite: *Tender known to be useless:* 109 S. C., 352; 96 S. E., 150; 84 S. C., 41; 65 S. E., 934; 3 Ga. App., 685; 60 S. E., 470; 120 Ga., 719; 48 S. E., 197; 26 R. C. L., 624. *Assumption of risk must be pleaded:* 121 S. E., 594; 121 S. E., 476; 75 S. C., 68; 55 S. E., 140. *Assumption of risk distinct from contributory negligence:* 66 S. C., 482; 45 S. E., 81. *Contributory negligence question for jury:* 117 S. C., 516; 109 S. E., 123; 116 S. C., 135; 107 S. E., 31; 114 S. C., 346; 103 S. E., 5; 108 S. C., 397; 95 S. E., 79; 96 S. C., 466; 81 S. E., 182. *Master to provide adequate supervision:* 123 S. C., 119; 116 S. E., 99. *Evidence of fraud:* 111 S. C., 37; 96 S. E., 697. *Parol evidence*

*varying a receipt:* 109 S. C., 105; 95 S. E., 349; 40 S. C., 134; 8 S. E., 680; 30 S. C., 450; 9 S. E., 512; 28 S. C., 224; 5 S. E., 611; 2 McC., 320; 22 C. J., 1135 and 1137. *Parol evidence explaining memorandum on check:* 22 C. J., 1091. *Receipt as evidence of condition of article receipted for:* 109 S. C., 105; 95 S. E., 348.

December 14, 1925.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The following statement appears in the record:

"The plaintiff, George F. Medlin, an employee of the Southern Cotton Oil Company, was injured in his foot while working in the Columbia Mill of the defendant company on October 30, 1923. Thereafter plaintiff filed his complaint in the County Court of Richland County, claiming damages for such injury in the sum of $3,000.

"The defendant company had, on March 3, 1924, been placed in the hands of receivers, and complaint was filed, making both the company and its receivers parties defendant to this action.

"Defendants duly filed their answer, setting up three defenses, a general denial, contributory negligence on the part of the plaintiff, and a release signed by plaintiff and his wife. The last defense being in the nature of new matter in the pleadings, the plaintiff thereupon replied in due time, alleging that such release was executed without his knowledge or consent, and further alleging that the consideration for such release was upon the understanding that it was received as a temporary adjustment pending a final agreement or settlement regarding the injuries received; further alleged that such release was never read over to him and that he was illiterate and unable to read or write his name.

"At the conclusion of plaintiff's testimony defendant made a motion for a nonsuit on the ground that no tender of the consideration passed for the release had been made

by plaintiff or his counsel. Plaintiff, by his counsel, showed an offer of tender, and the record will disclose what transpired between attorneys of record in the case.

"At the conclusion of all testimony defendant again made a motion for a directed verdict, both on the grounds of no tender having been made, and also because contributory negligence had been clearly established on the part of the plaintiff. Both motions were refused by his Honor, the presiding Judge.

"The jury returned a verdict for $2,454.05, which was the full amount claimed, less the amount paid plaintiff and for doctor and hospital bills, aggregating $545.95."

The defendant appealed upon the following exceptions:

"(1) Because his Honor erred in not finding and holding that no legal tender of the amount paid by the defendants for the release set up by defendant had been made by the plaintiff, and in refusing to grant a nonsuit for that reason.

"(2) Because his Honor erred in refusing to charge the jury on the question of assumption of risks under the plea of contributory negligence interposed by the defendant.

"(3) Because his Honor erred in not directing a verdict for the defendant upon its plea of contributory negligence on the part of the plaintiff when the uncontroverted testimony showed that plaintiff was furnished with a safe place in which to work, thoroughly lighted, and equipped as other plants and machines of a similar character, and no other accidents had happened in the particular room where this one occurred for a period of over 30 years.

"(3) Because his Honor erred in not directing a verdict on the motion of defendant when it was admitted by plaintiff that no undue influence was used and no fraud or overreaching was shown; the release offered in evidence being good in law and fact.

"(5) Because his Honor erred in not directing a verdict for the defendant on its third defense, sustaining the release when the testimony of plaintiff's wife clearly showed that

the release was explained to her and that she was instructed by her husband to sign said release.

"(6) Because the verdict of the jury was contrary to the overwhelming weight of the testimony both as to the execution of the release and as to the negligence of the plaintiff in his failure to exercise due diligence and care in the performance of his duties."

First Exception. The following appears in the record:

"J. E. Edens, white, one of the lawyers for the plaintiff, sworn, testified as follows:

"A. After receiving the answer from the attorneys for the defendant, they set up a release, which was new to us; we had no intimation of it, and I called Mr. Lumpkin over the phone—

"Q. The attorney for the defendant? A. Yes, sir; and told Mr. Lumpkin that we would have to make a tender, and suggested did he desire to get in touch with his clients or whether or not he would accept the money. Mr. Lumpkin told me, in effect, it would be useless to make a tender; that they would stand on the release and would not accept or take the money if we paid it by a check, and, finding they would not accept it, we did not do a useless thing or make a useless offer. Since that time we had another talk, and he reiterated he would stand on the defense they set up and wouldn't accept the money if we paid it in any form.

"Cross-Examination

"By Mr. Lumpkin: Q. That is a correct statement."

The case. of *Treadway v. Mills Co.,* 84 S. C., 41; 65 S. E., 934, and *Fayssoux v. Ry.,* 109 S. C., 352; 96 S. E., 150, show that this exception cannot be sustained.

Second Exception. The record contains this statement:

"The Court: That ends the tender proposition.

"Mr. Lumpkin: We move for a directed verdict on the ground that there has been—that this release has not been

attacked by the evidence of the plaintiff to show any fraud
or deceit or overreaching.

"The Court: Take the jury out, Mr. Cooper; I have to
discuss some facts.

"(Jury retired.)"

After the jury returned, the record shows that the following
took place:

"Mr. Lumpkin: As I understand, your Honor will charge
as to the assumption of risk in regard to contributory negli-
gence?

"The Court: No, sir; as I understand the cases, the
Judge cannot charge on something that is not made an issue,
and I will charge on the pleadings, and, if the Supreme
Court wants to take these two cases and show me where I
stand, that is all right."

It will thus be seen that his Honor, the presiding
Judge, did not refuse to construe the pleadings, but
stated that he would thereafter charge upon them,
which he did, and there was no exception to his charge in
this respect. This exception is therefore overruled.

Third, Fourth, Fifth, and Sixth Exceptions. None
of these exceptions can be sustained, for the reason
that the testimony upon which they rested was sus-
ceptible of more than one inference, and they are therefore
overruled.

Affirmed.

MR. JUSTICE WATTS and MR. ACTING ASSOCIATE JUSTICE
R. O. PURDY concur.

MESSRS. JUSTICES COTHRAN and MARION dissent.

MR. ACTING ASSOCIATE JUSTICE R. O. PURDY (concur-
ring): A further statement of the facts is unnecessary.
The exceptions, six in number, allege error, in substance:
(1) In holding that there was no tender of the amount paid
for the release, and in refusing to grant a nonsuit for that
reason; (2) because his Honor refused to charge the jury
on the question of the assumption of risk, under the plea

of contributory negligence; (3) that his Honor erred in not directing a verdict (a) upon the defendant's plea of contributory negligence on the part of the plaintiff; and (b) in not holding that the release was valid and good in law and in fact.

The sixth exception is as follows:

"Because the verdict of the jury was contrary to the overwhelming weight of the testimony, both as to the execution of the release and as to the negligence of the plaintiff in his failure to exercise due diligence and care in the performance of his duty."

Treating the exceptions in the inverse order, as stated:

The record does not disclose that there was a motion made for a new trial, and this exception is overruled.

Had there been a motion for a new trial made and refused upon the ground stated, there would have been no error in refusing it, as there was testimony to support the verdict.

The rule is so well settled that authorities need not be cited that a person who signs a paper is bound by it, and that a failure to read it will not relieve the party of the consequences of signing the paper.

There are exceptions to this rule. In this case, the trial was had before a Judge of long and varied experience. Medlin and his wife were shown from the testimony to be ignorant. Medlin was hurt, and the release was signed when he was in dire straits and in the act of leaving the hospital and while in an automobile preparing to leave. The trial Judge had all these things before him and this Court cannot say that he erred in submitting the validity of the release to the jury, and it was submitted with thoroughness, and the verdict of the jury was adverse to the defendant. *J. B. Colt Co. v. Britt,* 123 S. E., 845.

On the question of assumption of risk, we do not regard the case of *Betchman v. Railway Co.,* 75 S. C., p. 68; 55 S. E., 140, as undertaking to settle the question of pleading

the assumption of risk. The following is taken from that case:

"This action shows that John Betchman was either engaged in another department of labor from that of the fellow servants in charge of the train, or that he and they were engaged in a different piece of work. Therefore their negligence was not one of the ordinary risks which he assumed upon entering into the contract aforesaid."

Hence what was said by the Court in reference to pleading the assumption of risk must be treated as *obiter dictum,* in view of the decisions of this Court, and particularly in view of the decisions which have been since promulgated on that subject. No matter what may be the law in other jurisdictions, it is now so well settled that assumption of risk is an affirmative defense, and must be pleaded, that only a few of the cases need be referred to. *Strait v. Rock Hill,* 104 S. C., 116; 88 S. E., 469. *Kelly v. Lumber Co.,* 107 S. C., 96; 91 S. E., 978. And in the case of *Becker v. Railroad Co.,* 128 S. C., 131; 121 S. E., 476, it is held that an employee pleading assumption of risk must confine his proof of the risk assumed in the specification pleaded.

The United States Supreme Court has undertaken to draw the distinction between the assumption of risk and contributory negligence, as is clearly set forth in *Railroad Co. v. Horton,* 233 U. S., at pages 503, 504; 34 S. Ct., 635; 58 L. Ed., 1062; L. R. A., 1915C, 1; Ann. Cas., 1915B, 475, as follows:

"* * * There is, with respect to cases not in this category, a limitation upon the effect that is to be given to contributory negligence, while no corresponding limitation is imposed upon the defense of assumption of risk—perhaps none was deemed feasible.

"The distinction, although simple, is sometimes overlooked. Contributory negligence involves the notion of some fault or breach of duty on the part of the employee,

and, since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee. The risks may be present, notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workman; danger that must be and is confronted in the line of his duty."

The decisions of this Court indicate that this Court holds to the doctrine that contributory negligence and assumption of risk are akin and tend to shade into each other.

His Honor charged the jury as follows:

"Now, the defendant sets up a second defense, in which it alleges that, if the plaintiff was injured, he was guilty of negligence himself, in that he had full instructions and due notice as to the proper methods of replacing belts, and knew the surrounding conditions of the conveyer box, and that he conducted himself so recklessly and carelessly at that point that he brought about his injury, and that his negligence was a contributing proximate cause of the injury."

His Honor further charged the jury that, if they believed the negligence of the plaintiff had something directly to do with bringing about the injury to the plaintiff, the jury could not stop there, but would have to go further and determine whether the defendant had made out its defense of contributory negligence, because the plaintiff owed a duty, not only to himself, but to others, to exercise ordinary care, such care as an ordinary reasonably prudent man would have exercised in the same circumstances in the discharge of his duty, and added that, if the jury found the plaintiff was guilty of contributory negligence, having something

directly to do with bringing about the injury, then the parties would be left where the jury found them, unless the jury believed that the master was willful. It will thus be seen that the Judge submitted the case to the jury under the issues raised. The testimony shows that the tender to return the money paid for the release would have been refused, and therefore the exception, based on failure to return the release money, cannot be sustained.

MR. JUSTICE COTHRAN (dissenting) : I have considered only the exception assigning error in the ruling of the Circuit Judge, that the defense of assumption of risk, applicable to perils ordinarily incident to the servant's employment, could not be considered, for the reason that it had not been pleaded. I think that the error was properly assigned, and that the judgment of the Circuit Court, upon this ground alone, should be reversed.

The defendants contended, and there was evidence tending to show, that the injury sustained by the plaintiff resulted, not from any negligence on the part of his employers, but from a risk ordinarily incident to the servant's employment, which by the contract of employment he had assumed. If this be true, the defendants were entitled to rely upon the fact, in exoneration, without having formally pleaded the defense of assumption of risk.

Whether *obiter dictum* or not, the present Chief Justice has clearly and properly announced the rule in the case of *Betchman v. Railway Co.,* 75 S. C., 68; 55 S. E., 140, as follows :

"When a person enters into the employment of another as a servant, he assumes, in law, those risks that are ordinarily incident to the service. In an action by the servant for damages sustained through the alleged negligence of the master, the latter may show, without pleading the facts as a defense, that the injury was the direct and proximate result of an ordinary risk, as such risks are presumed to have been within the contemplation of the parties when

they entered into the contract, and testimony to that effect tends directly to refute the allegation of negligence. When, however, the defendant relies upon facts, occurring after the parties had entered into the agreement, to show that the plaintiff had, by his conduct, assumed the risk which caused the injury, such facts must be set forth as a defense, as they are in the nature of a plea of confession and avoidance."

The defense of assumption of risk appears under two quite different forms: (1) Where the injury to the servant has resulted from a peril ordinarily incident to his employment, without negligence on the part of the master; (2) where the injury to the servant has resulted from an extraordinary peril due to the master's negligence, but of the presence of which the servant was cognizant and the danger of which he appreciated.

As is said in *Railway v. Horton,* 233 U. S., 504; 34 S. Ct., 635; 58 L. Ed., 1062; L. R. A., 1915C, 1; Ann. Cas., 1915B, 475, cited with approval in *Kirkland v. Railway Co.,* 128 S. C., 47; 121 S. E., 594:

"Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it."

It is unfortunate that matters so diverse in their natures as the two forms of assumption of risk should have been given the same designation. The first form springs out of the contract of employment by which the servant assumes the ordinary risks of the service. It in no wise involves

negligence on the part of the master; in fact, such negligence is necessarily excluded. The second form arises outside of the contract, occurs after the making of the contract, and is referable to the law of torts, where the master has been guilty of negligence, which the servant is aware of, and whose dangers he appreciates.

There is a much greater similarity between contributory negligence and assumption of risk of the second form than there is between the two forms of assumption of risk. At least both contributory negligence and assumption of risk of the second form imply negligence on the part of the master, for neither can exist without it; whereas assumption of risk of the first form proceeds upon the theory that there has been no negligence on the master's part.

It has been suggested, incorrectly I think, that contributory negligence and assumption of risk of the second form sometimes shade imperceptibly into each other. They are inherently separate and distinct: The only element they have in common is the negligence of the master. A servant cannot be held guilty of contributory negligence unless he is shown to have been negligent. He may be held to assumption of risk of the second form, however careful he may have been in the operation of the particular appliance, if the appliance was negligently defective, and he knew and appreciated the danger. See the quotation from *Railway Co. v. Horton,* 223 U. S., 492; 34 S. Ct., 635; 58 L. Ed., 1062; L. R. A., 1915C, 1; Ann. Cas., 1915B, 475, in the opinion of Mr. Justice Purdy.

In *Railway Co. v. McDade,* 191 U. S., 64; 24 S. Ct., 24; 48 L. Ed., 96, the Court said:

"The question of assumption of risk is quite apart from that of contributory negligence."

In *Schlemmer v. Railroad Co.,* 220 U. S., 590; 31 S. Ct., 561; 55 L. Ed., 596, the Court held that there is a practical and clear distinction between assumption of risk and contributory negligence. By the former, the employee assumes

the risk of ordinary dangers of occupation and those dangers that are plainly observable; the latter is the omission of the employee to use these precautions for his own safety which ordinary prudence requires.

I cannot but think that the reasoning and conclusion of the Chief Justice, which are quoted above, in the case of *Betchman v. Railway Co.,* were influenced by his conclusive reasoning in the case of *Wilson v. Railroad Co.,* 51 S. C., 79; 28 S. E., 91, the analogy of which to the matter now in controversy appears to me to be complete. There the question was whether the defendant, under a general denial, should be allowed to prove that the injury to the plaintiff was caused by the negligence of a fellow servant. The Circuit Judge excluded the testimony and his ruling was reversed by the Supreme Court. After citing numerous authorities to the effect that the defendant may offer affirmative as well as negative evidence under a general denial, the opinion proceeds:

"The reason why testimony is admissible, under a general denial, to prove that the injury was caused by the negligence of a fellow servant, is because its tendency is to show that there was no negligence whatever on the part of the defendant,"

—which is precisely the reason why, under a general denial, the defendant may show that the injury was the result of the ordinary risks incidental to the servant's employment; a demonstration that it was not the result of the master's negligence.

The test is thus stated by Mr. Pomeroy, quoted by the Chief Justice in the *Wilson Case:*

"Evidence which is in its nature affirmative is often confounded with defenses which are essentially affirmative, and in avoidance of the plaintiff's cause of action, and is therefore mistakenly regarded as new matter, requiring to be specially pleaded, although its effect upon the issues

is strictly negative, and it is entirely admissible under an answer of denial."

And by Mr. Bliss (section 327, Code Pleading) :

"Facts may be proved, although apparently new matter, which, instead of confessing and avoiding, tend to disprove those alleged by the plaintiff. Such facts support the denial."

The Chief Justice then proceeds to draw the distinction, as to the necessity of pleading, between the defenses of fellow servant and contributory negligence, showing that, guided by the foregoing rule, the defense of fellow servant is simply a negation of the plaintiff's case, whereas that of contributory negligence is an admission or confession thereof, with new matter in avoidance; the one need not be pleaded, whilst the other must be. I can see no difference in this respect between the defense of assumption of risk of the first form and the defense of fellow servant, both of which are simply denials of the plaintiff's cause of action and need not be specially pleaded.

In a note to 30 L. R. A. (N. S.), 1067, the author says :

"Where the risks in question are merely the ordinary risks [incident to the employment] * * * the phrase 'assumption of risk' does not express any distinctive rule of law, but merely expresses the legal principle that the master is not an insurer of the safety of his servant. * * * A specific pleading of the assumption of risk of the ordinary dangers incident to the service adds nothing to the general denial, and this is almost universally asserted wherever the precise question is passed upon by the Courts."

In *Tucker v. Terminal Co.,* 41 Or., 82; 68 P., 426, it is held (quoting *Syllabus*) :

"In an action for the death of an employee, the answer need not allege that he assumed the risk that caused his injury, if the hazard was ordinary."

In *Owl Creek Co. v. Goleb (C. C. A.),* 210 F., 209; 127 C. C. A., 27, the Court held (quoting *syllabus*) :

"Where assumed risk is incident to a servant's contract of employment and arises out of it, it need not be specially pleaded, in order to be available as a defense in an action for injuries."

In *Phillips v. Railroad Co.,* 100 Neb., 157; 158 N. W., held (quoting *syllabus*):

"Assumption of risk, not usually and ordinarily incident to service, * * * must be specially pleaded."

In *Cuozzo v. Clyde,* 223 Mass., 521; 112 N. E., 215, it is held (quoting *syllabus*):

"Where a servant, as part of his contract of employment, assumed a risk, and such risk resulted in injury, it is not a matter of defense to be specially pleaded, as would be a risk not arising out of the contract."

In *Tucker v. Northern T. Co.,* 41 Or., 82; 68 P., 426, it is said:

"It is not alleged in the answer that plaintiff's intestate assumed the risk that caused his injury, and such averment is unnecessary, if the hazard was ordinary, for the rule of the common law is that when a servant, of suitable age and sufficient intelligence, enters into the employ of the master, he is presumed to understand, and therefore, in consideration of the rate of compensation agreed to be paid voluntarily assumes all the risks ordinarily incident to the business in which he engages (citing cases); and, whenever the law presumes a fact, it is not necessary to aver the same in a pleading. Bliss Code Pl. (3rd Ed.), § 175. The rule appears otherwise, however, in respect to extraordinary risks, in which case the servant's assumption thereof, to be available as a waiver, must be affirmatively alleged in the answer."

To same effect is *Maxson v. Case Co.,* 81 Neb., 546; 116 N. W., 281; 16 L. R. A. (N. S.), 963.

In *Evans Co. v. Crawford,* 67 Neb., 153; 93 N. W., 177, it is said:

"All ordinary risks incident to the employment are as-

sumed, as a matter of law, and are deemed to have entered into the contract of employment. Where negligence is alleged against the master, which he denies, and on the trial of the issue the question of fact to be determined is the alleged negligence, the defendant is entitled to the benefit of an instruction to the effect that the ordinary risks incident to the employment are assumed by the servant, as a matter of law, and without any affirmative plea in respect thereof."

In *Martin v. Light Co.*, 131 Iowa, 724; 106 N. W., 359, the Court said:

"When a servant enters the employment of a master, he is presumed to have taken into consideration such danger and exposure to injury as is naturally incident to or connected with such service, even when the master has exercised all reasonable care for his servant's safety. The risk thus arising, which involves no element of negligence on the part of the master, the servant takes upon himself, and his wages are considered to be his full compensation for the danger thus incurred, as well as for the actual labor of his hands. This so-called 'assumption of risk' inheres in the contract of employment or in the relation of master and servant, and need never be pleaded as a defense. A simple denial of the charge of negligence raises the question of this assumption sufficiently for all purposes of the case."

The case of *Duffey v. Coal Co.*, 147 Iowa, 225; 124 N. W., 609; 30 L. R. A. (N. S.), 1067, contains an exceedingly clear statement of the principle. It is there said:

"The term 'assumption of risk' has come to be used in a twofold sense. It is often said that an employee assumes the ordinary risk that is incident to his employment. This form of assumption of risk is often pleaded by defendants in personal injury cases, although it is quite unnecessary to do so. Assumption of risk in its true sense has reference to those risks arising out of the negligence of the master, when such negligence is known to the employee, and the danger therefrom appreciated by him. In the first form

herein indicated, a specific pleading of assumption of risk of the ordinary dangers incident to an employment is a mere amplification of the general denial, and adds nothing to it in a legal sense. In the second form herein indicated, it is an affirmative defense, and must be specifically pleaded as such."

Several South Carolina cases have been cited as supporting the proposition that assumption of risk, of whatever form and under all circumstances, is an affirmative defense, which must be pleaded. All of them involve assumption of risk of the second form, as to which there cannot be a doubt as to the necessity of pleading the defense, and are not, for that reason, authority upon the question under discussion.

In *Strait v. Rock Hill,* 104 S. C., 116; 88 S. E., 469, the basis of the charge of negligence was the defective condition of the rock crusher. Assumption of risk under such circumstances was a defense, which, as a matter of course, in the nature of confession and avoidance, had to be pleaded. It would fall under the second form of the defense of assumption of risk.

In *Kelly v. Lumber Co.,* 107 S. C., 96; 91 S. E., 978, the basis of the charge of negligence was the defective condition of the appliance upon which the servant was working. The defendant contended that, although such was the condition, the servant knew it, and therefore assumed the risk; clearly a case of the second form. The Court held that it had to be pleaded.

In *Becker v. Railroad Co.,* 128 S. C., 131; 121 S. E., 476, the basis of the charge of negligence was the defective condition of an engine upon which the servant was working. The defendant moved for a nonsuit upon the ground that the plaintiff knew of the defect and continued to work after the master had promised to repair it, thereby assuming the risk; clearly a case of the second form. The Court held that, as under such circumstances the defense had to be

pleaded, the defendant was confined to the specifications of that defense which he does plead.

The case of *Montgomery v. Railroad Co.,* 73 S. C., 503; 53 S. E., 987, contains an exceedingly interesting and able opinion of Mr. Justice Jones (afterwards Chief Justice of this Court for many years), in which he demonstrates the assimilation of assumption of risk of the second form of contributory negligence, so far as the necessity of pleading it is concerned, and conclusively shows, under the rules of pleading, that there should be no difference in the matter of pleading between these two defenses. There can be, of course, not the slightest assimilation of assumption of risk of the first form to contributory negligence, and the rules of pleading which require assumption of risk of the second form to be pleaded have not the remotest application to that of the first form, while applying with exact fitness to both contributory negligence and assumption of risk of the second form.

The quotations from the authorities contained in the opinion, which need not be repeated here, conclusively show that a defense which negatives the allegation of negligence, as the assumption of risk of the first form does, may be proved under a general denial. Towards the end of the opinion this passage occurs:

"Applying the foregoing elementary principles of pleading to the case in hand, it is clear that assumption of risk is new matter in the nature of confession and avoidance, and must be pleaded."

It is manifest that the learned justice was speaking of that form of assumption of risk which admits the negligence of the defendant and by way of confession and avoidance seeks to be relieved of that conceded negligence by certain other facts or delinquencies attributed to the servant. Certainly the effort to establish the fact that the servant was injured as a result of the risks incidental to his employment, which excludes the negligence of the master, cannot, by any

possibility, be construed into a confession and an effort to avoid its consequences.

MR. JUSTICE MARION concurs.