CORA D. ASHTON, administratrix, *vs.* BOSTON AND MAINE RAILROAD.

Berkshire.    September 14, 1915. — October 13, 1915.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* Employer's liability: assumption of risk, Incapacity caused by continuous work without rest. *Workmen's Compensation Act.    Electricity.*

If a workman of long experience in repairing electric wires, who is one of three men employed by a railroad corporation as the "emergency crew" in charge of the electric zone at a tunnel and is foreman over the other two, and whose duty it is to remedy defects in the electric wire system whenever they occur, goes upon a pole strung with wires carrying eleven thousand volts of electricity without following his ordinary practice of calling by telephone to have the power shut off and is killed by electricity by reason of the defective insulation of the wires, no action can be maintained against the railroad corporation for causing his death, because there is no evidence tending to show negligence on the part of that corporation toward its employee who agreed to perform the service of repairing the electric wires when they were defective.

The provision of the workmen's compensation act contained in St. 1911, c. 751, Part I, § 1, that an employer who has not become a subscriber under the act, when sued for the injury or death of an employee sustained in the course of his employment, cannot set up the defence that the employee had assumed the risk of the injury, does not prevent such employer from relying on the fact that the danger that caused the injury or death of the employee was one which he was hired to incur and that consequently the employer was under no duty to protect him from it.

In the present case it was *pointed out* that there were additional reasons why the plaintiff had failed to show negligence on the part of the defendant, because there was no evidence to show that any defect in the insulator caused the injury that resulted in the death of the plaintiff's intestate and no evidence that at the time of the accident the power was on upon the wire connected with the insulator that was alleged to have been defective.

*Whether* an employer can be held liable for causing the injury or death of an employee by reason of his continuous employment without rest so that he became physically and mentally incapable of taking care of himself, here was referred to as a question that never has been passed upon by this court.

In the present case, where the plaintiff's intestate was a foreman who apparently was permitted to choose his own hours of rest, provided his work was performed, and who, although until the night before the accident he had worked (with the exception of one interval of five hours) almost continuously day and night for three days and a half, on the night before the accident went to bed at half past six o'clock and slept about eleven and a half hours, it was *held*, that the jury would not have been warranted in finding that the intestate was in such a condition of mental or physical exhaustion as to be unable to look out for himself.

TORT by. the administratrix of the estate of Miles T. Ashton, late of North Adams, for causing the death of the plaintiff's intestate on April 21, 1914, while he was in the employ of the defendant, the first count being for instantaneous death "owing to the negligence of the defendant, its agents and servants," and the second count being for causing the death of the plaintiff's intestate by alleged negligence in failing to shut off the power from the wires attached to the pole on which the intestate was engaged in the work of repairing the wires. Writ dated July 30, 1914. .

·  In the Superior Court the case was tried before *Hall, J.* The evidence is described in the opinion. At the close of the evidence the plaintiff waived the second count of her declaration and consented that the case should be submitted to the jury on the first count only. On motion of the defendant the judge ordered a verdict for the defendant and reported the case for determination by this court, with a stipulation of the parties that, if the ordering of the verdict was wrong, judgment should be

entered for the plaintiff in the sum of $3,000 with interest from May 13, 1915; and that, if the ordering of the verdict was right, judgment was to be entered for the defendant on the verdict.

The case was submitted on briefs.

*J. F. Noxon & M. L. Eisner,* for the plaintiff.

*D. Malone,* for the defendant.

CROSBY, J.  This is an action of tort, brought by the widow of Miles T. Ashton as the administratrix of his estate, to recover for his death.  The plaintiff waived the second count of the declaration.  The plaintiff's intestate was killed on April 21, 1914, while in the employ of the defendant as foreman of the "emergency crew" in charge of the electric zone, so called, at the Hoosac Tunnel.  He had been a foreman in the defendant's employ from October, 1912, until the time of his death.  He had worked for the Postal Telegraph Company for twenty-six years before he went to work for the defendant.  The "emergency crew" consisted of the deceased and two other employees, Hebert and Davis.  It was the duty of the deceased and the men under him to maintain and keep in repair the poles and electric wires situated within the electric zone, and the nature of the work was such that the hours of employment were more or less indefinite and irregular, as he was expected to do such work and make such repairs as from time to time might be required. , The fatal accident occurred on Tuesday afternoon, about half past four o'clock. : For some days previously there had been trouble with the electric wires, and the deceased and the men under him had been engaged in making repairs thereon.

There was evidence to show that on the Friday morning before he was killed he went to work at seven o'clock, came home to dinner at a quarter after twelve, and returned to work at one o'clock, returning home for his supper at a quarter of six on the same day; that at nine o'clock in the evening of that day he was called by telephone; that he said he was called for trouble on the railroad, and left his house at about a quarter after nine, and returned home at about two o'clock the next morning and remained there until about a quarter to seven Saturday morning, when he went to work and did not return home until about eight o'clock on Sunday morning; that he had his breakfast and went back to work and did not return until Monday morning about six

o'clock, when he stayed about half an hour, then went back to work, and returned to his house on Monday night and went to bed about half past six in the evening, remaining there until the next morning about six o'clock. The accident occurred that afternoon (Tuesday) about half past four o'clock.

As a part of the electrical apparatus, connected with the wires, there were insulators attached to cross-arms or struts, the cross-arms being attached to poles. The plaintiff's intestate, having learned that one of these insulators, which was at the top of a pole near the power house, was defective, undertook to replace it with another insulator. There were three other insulators on this pole; connected with each was a wire. The defective insulator was nearest to the power house; the wire passing through this insulator was called the power phase; the outside wire, being the one farthest from the power house, was called the control phase, and the two inner wires, which were strung between the other two, were feed wires, and when the power was on carried eleven thousand volts. At the time of the accident the power was on the feed wires, but was not on the two outside wires. In view of the high voltage carried by these wires, it was extremely dangerous to undertake any work near them without first shutting off the power; and as an additional precaution, a grounding pole was attached after the power had been shut off.

There was evidence to show that before any repairs were made upon the wires by the plaintiff's intestate, it was the practice for him to cause the power to be removed from the wires by calling the telephone operator at the west portal of the tunnel and requesting that the power be removed at a time stated. This request was transmitted to the dispatcher's office at Greenfield and directions given that the power be removed in accordance with such request.

There was no evidence to show that the plaintiff's intestate made any request that the power be shut off from the feed wires before he ascended the pole to make the repairs before the accident.

The only question presented by the report is whether there was any evidence of negligence on the part of the defendant. The plaintiff contends that the insulators furnished and used by the defendant were defective, that the latter knew, or in the

exercise of reasonable care should have known, of such defects, and that by continuing to use them, it was negligent. The undisputed evidence shows that the intestate's contract of service made it his duty to repair defects in the electric wire system, and that apparently was the work and the only work which he was called upon to perform. Whenever anything connected with the system became defective or out of repair, it was his duty to remedy it. That was what he was employed to do. He was a man of experience in the performance of his duties, and had as complete knowledge of the defective appliances as anybody and appreciated as fully as his employer or any one the dangers incident to the work of making such repairs. It is well settled that where one is employed to perform manifestly dangerous work, there is no liability where the risks growing out of the work are assumed by the laborer by his contract of employment. The record shows that the defendant, at the time of the accident, was not a subscriber under the workmen's compensation act (St. 1911, c. 751), and while the act (Part I, § 1) provides that in an action to recover damages for personal injury sustained by an employee in the course of his employment, or for death resulting from personal injury so sustained, it shall not be a defence that the employee had assumed the risk of the injury; still the removal of such defence has no application to a case of this kind where the evidence shows that the deceased assumed the risk by virtue of his contract of employment. Ordinarily where one enters the service of another as employee, he agrees to assume all the open and obvious risks of the business. This usually is called a contractual assumption of risk. There is another class of cases where an employee suffers an injury by reason of the negligence of his employer in reference to some matter outside the risks assumed under his contract of employment, as, for instance, the failure of the employer to furnish safe and suitable tools and appliances for the employee. In such cases there may be evidence of negligence of the employer. The question often is whether the employee is precluded from recovery on the ground that he assumed the risk. If the evidence shows that by his conduct there was such an assumption of risk, he is not entitled to recover. This is called a voluntary assumption of the risk. It is a matter of defence to be pleaded and proved affirmatively by a defend-

ant if he would avoid the consequences of his negligence, and in order to maintain such a defence it must appear that the plaintiff knew and fully appreciated the risk.

The doctrine of contractual assumption of risk, that is, that the risk was one of the dangers incident to the employment, is not an affirmative defence, but stands upon an entirely different footing. With reference to risks and dangers covered by the contract, the employer owes the employee no duty and so cannot be held guilty of negligence. *Murch* v. *Thomas Wilson's Sons & Co.* 168 Mass. 408. *Gleason* v. *Smith*, 172 Mass. 50. As the contractual assumption of risk is not a matter of affirmative defence and can be shown under a general denial, it is not affected by that part of the workmen's compensation act (St. 1911, c. 751, § 1) above referred to.

It follows that the plaintiff cannot recover because of the defective condition of the insulator when the duties of her intestate's employment required him to remedy such defect by making the necessary repairs. *Boisvert* v. *Ward*, 199 Mass. 594. *Archer* v. *Eldredge*, 204 Mass. 323.

Besides there is no evidence to show that any defect in the insulator caused the injury which resulted in the death of the plaintiff's intestate. There is no evidence that the power was on the wire connected with the defective insulator at the time of the accident. There is nothing to show that the defendant failed to furnish a sufficient number of workmen to do the work in safety.

The plaintiff also contends that the defendant obliged her intestate to work so continuously without sleep or rest that he was in no condition, either mentally or physically, to exercise reasonable or proper diligence for his own safety, and that to compel him to work under the circumstances disclosed by the evidence might be found to have been negligence on the part of the defendant.

We understand the plaintiff to contend that when her intestate undertook to go upon the pole for the purpose of repairing the insulator without previously notifying the telephone operator at the West Portal to shut off the current of electricity he was unable by reason of physical and mental exhaustion to protect himself from harm, and that his condition was due to long con-

tinued labor without rest.  It is to be noted that there is no evidence to show that the intestate was employed contrary to any rule of the defendant limiting the number of hours consecutively which an employee should be permitted to work; nor is there any evidence to show that the intestate was compelled to work an unreasonable length of time without sleep or rest, or that as foreman of the work he was not permitted to fix his own hours of rest provided the necessary repairs were made with reasonable expedition.

The question, whether an action may be maintained by or on behalf of an employee or his estate against his employer for negligence, upon evidence that such employee has suffered an injury due to being employed so continuously without rest as to be physically and mentally incapable of taking care of himself, never has been passed upon by this court.

If we assume, without deciding, that evidence of the kind presented in this case might under some circumstances justify a finding of negligence and warrant a recovery for damages, still we are of opinion that in the case at bar it could not have been found that the plaintiff's intestate worked so continuously without sleep or rest as to be physically or mentally exhausted and unfitted to exercise proper care for his own safety and protection.  The evidence above recited tends to show that he worked almost continuously from the Friday morning before the accident until Monday night, except that he was at home from Saturday morning at two o'clock until seven o'clock the same morning; but it is not disputed that he came home Monday night and went to bed about half past six and remained there until the following (Tuesday) morning, at about six o'clock.  The fatal accident occurred in the afternoon of that day.  This evidence shows that he had about eleven and one half hours' rest the night before the day of the accident.  We think it plain upon this evidence that the jury would not have been warranted in finding that he was in such a condition of mental or physical exhaustion as to be unable to look out for himself.

We are of opinion that the record does not disclose any evidence of negligence on the part of the defendant.  In accordance with the terms of the report the entry must be

*Judgment for the defendant on the verdict.*