CATHERINE KENNEALLY, administratrix, *vs.* OCEANIC STEAM NAVIGATION COMPANY, LIMITED.

Suffolk.  March 12, 1918. — May 29, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Negligence,* Employer's liability, Toward longshoreman.  *Ship.*

A steamship had been unloaded by means of a stage of planking extending from the pier about thirty or thirty-five feet long and six feet wide with guard rails of timber on each side, the top of each rail being five or six inches above the floor of the stage. While the vessel was being unloaded platforms were placed against the side of the stage to prevent the cargo from falling into the water and were removed as soon as the cargo was unloaded. While these platforms were in place the longshoreman who each time threw back the fall to lower the next piece of cargo stood with one or both feet on the platform. An experienced longshoreman in the employ of the owner of the vessel, who had been working in this way, temporarily left his work to go to another part of the pier and when he returned the hatch he was working at had been emptied of cargo and the dirt that had been swept out of the hold was being lowered in boxes. The longshoreman, with a fellow workman, was ordered to attend to this work. During his absence, when the unloading was completed, the platforms by the side of the stage had been removed by order of the superintendent. It was broad daylight at three o'clock in the afternoon. When the last box of dirt was lowered the longshoreman threw the fall back to the hatchman. As he threw the fall he was standing on the rail of the stage and, either because he lost his balance or because he stepped back where the platform had been, he fell between the vessel and the pier and received severe injuries which resulted in his death. In an action by the administratrix of the estate of the longshoreman against the owner of the vessel to recover for his death and conscious suffering, it was *held,* that there

was nothing to show negligence on the part of the superintendent, who had no reason to think that the longshoreman expected to use the platform to stand upon when it was apparent that it had been removed, and that, even if it had been the custom not to remove the platforms until the cleaning of the hold had been completed, it was not the duty of the superintendent to warn an experienced longshoreman of a danger which was plainly visible.

In the same case it was *held* that the platforms were not a part of the ways, works or machinery of the defendant.

TORT by the administratrix of the estate of Daniel J. Kenneally, late of Boston, to recover for the death and conscious suffering of the plaintiff's intestate on September 27, 1911, when he was employed by the defendant as a longshoreman, the declaration containing two counts, the first alleging negligence of a superintendent and the second alleging a defective condition of the ways, works or machinery of the defendant. Writ dated May 14, 1912.

In the Superior Court the case was tried before *Sanderson*, J. The evidence is described in the opinion. At the close of the evidence the judge ruled that the action could not be maintained and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*J. Cavanagh*, for the plaintiff.

*S. R. Jones*, for the defendant.

CARROLL, J. The plaintiff's intestate, Daniel J. Kenneally, was employed by the defendant as a longshoreman. On September 27, 1911, he was at work discharging a cargo from No. 4 hatch of the steamship Canopic; seventeen men were engaged in this work, nine in the hatch, and eight on the trucks which were used to remove the cargo from the wharf. In handling the trucks the men worked in pairs. The material was lowered by a fall over the ship's side, one of the men unhooking the load, the other handling the truck. The stage on which the cargo was landed extended from the wharf to the ship; it was of planking firmly fastened together, about thirty or thirty-five feet long and six feet wide, with guard rails of timber on both sides, the top of each rail being five or six inches above the floor of the stage. Platforms or skids from four to six feet wide were placed against the side of the stage, and there was evidence that they were so placed to protect the cargo from falling overboard and were removed as soon as the ship was discharged. There was also some evidence that in throwing back the fall a man stood with one or both feet on the platform.

About half past two o'clock in the afternoon, the No. 4 hatch had been discharged and all the men, except Kenneally and his partner, had been set to work in the hold sweeping the dirt before loading the outward cargo. Kenneally went to another part of the pier and during his absence the platforms were removed by order of the superintendent. The intestate and his partner were ordered to get two boxes of sawdust for use in the hold, and to take away the boxes of dirt as they were lowered to the stage, — these boxes being lowered in the same manner as the cargo. Two of the boxes had been lowered and carried away, and as the third box was lowered and placed on the truck, Kenneally, standing on the rail of the stage, threw the fall to the hatchman; and either because he lost his balance or stepped back where the platform had been, he fell, receiving injuries from which he died. The ship listed slightly inshore, making it more difficult to throw the fall. The accident happened about three o'clock in the afternoon, there was plenty of light at the time. The action is under the employers' liability act, the plaintiff contending there was negligence of the superintendent. The judge directed a verdict for the defendant.

When the employee returned to the stage it was perfectly obvious that the platforms had been removed. There was nothing to show negligence on the part of the superintendent: he did not know that Kenneally expected to use the platform to stand upon when it was apparent it had been removed; and, even if it were not customary to remove the platforms until the hold had been cleaned, there was no duty on the part of the superintendent to warn an experienced longshoreman of a danger which was visible on the slightest inspection. *Lenzi* v. *Hanscom Construction Co.* 221 Mass. 195. *Cole* v. *L. D. Willcutt & Sons Co.* 218 Mass. 71. *Kempton* v. *Boston Elevated Railway*, 217 Mass. 124.

The skids or platforms were not a part of the ways, works or machinery of the defendant. *Cuozzo* v. *Clyde Steamship Co.* 223 Mass. 521. *Neagle* v. *New York, New Haven, & Hartford Railroad*, 214 Mass. 472.

*Exceptions overruled.*