CHARLES H. SHERIDAN *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Hampden.    September 17, 1925. — October 15, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Negligence,* Employer's liability.

Where, at the trial of an action of tort by an employee of a railroad company against his employer for personal injuries alleged to have resulted from a piece of hardened steel breaking from a blade of a counterbore as, in the course of his employment, he was driving it into its holder, the plaintiff specifies as one item of negligence that the blade had been improperly hardened before it came to him, "which rendered it exceedingly brittle at least in different places," but it does not appear that the defendant manufactured the blade and there is no evidence to justify a finding that it was improperly hardened, rulings requested by the defendant that "There is no evidence sufficient to warrant the jury in finding: . . . That any defect in the hardening of this blade could have

been discovered by any reasonably careful inspection of the same," and that "There is no evidence sufficient to warrant the jury in finding: . . . That the defendant was negligent in failing to discover that this blade was improperly hardened," should have been given.

At the trial of the action above described, it appeared that the cause of the chipping of the hardened steel blade was that the plaintiff used a hard, instead of a soft or Babbitt hammer, to drive the blade into its holder and used shims instead of tapering wedges to keep the blade in place; that the plaintiff knew the danger of such use; that the accident happened after the railroad corporation had received back possession and control of the railroad following the period of control by the Director General of Railroads; that the plaintiff had been employed by the railroad corporation before Federal control, had been employed by the Director General of Railroads during Federal control, and had been employed by the railroad corporation after Federal control; that during the Federal control the plaintiff had requested Babbitt hammers; that there had been a time previous to or during a part of the period of Federal control when soft or Babbitt hammers were used and that they either had worn out or had disappeared and had not been replaced; that there were none when the defendant corporation resumed control. The trial judge ruled that there was no duty resting on the defendant to furnish any different tools from those used when the defendant resumed control, provided the danger of using those furnished was obvious and was appreciated by the plaintiff. *Held*, that

(1) The defendant owed no duty to the plaintiff to supply soft hammers for his use;

(2) A verdict for the defendant should have been ordered.

Tort for personal injuries received while the plaintiff, in the employ of the defendant, was engaged in putting into its proper place a steel knife blade which was part of a device known as a counterbore, when the blade, because of the negligent and careless failure of the defendant, its agents, servants and employees, to provide him with reasonably safe, proper and suitable tools and appliances to perform said work, flew into pieces and a piece of hardened steel struck and entered his right hand. Writ dated May 25, 1922.

In response to a motion by the defendant, the plaintiff specified as the "character and appearance of the steel knife blade and of the counterbore alleged in the plaintiff's declaration," that the "knife was made of high speed steel, which renders it very brittle when tempered. The blade was about six inches long, two inches wide and about one half inch thick; this is inserted in a holder made of steel and a pilot or cap fits on top of the holder after the blade is in-

serted"; as the "occasion or reason that required the insertion of the steel blade into the counterbore," that "In order to sharpen the blade it must be driven out of the holder and when sharpened driven in again"; and as the respect in which "the defendant was negligent in failing to provide the plaintiff with proper and suitable tools, machinery and appliances," that "Only Babbitt hammers or hammers of soft material should be used for the purpose of hammering the blade in or out and no such instrumentalities had been provided. The method used for fitting and centering blades in counterbores was an antiquated one. Taper wedges should have been provided to hold in the blade and properly to center same, and we were obliged to use little pieces of iron or tin shims to assist in tightening blades into the socket as no wedges of any kind were provided to center the blades and hold it in proper place. The blade also had been improperly hardened before it came to me, which rendered it exceedingly brittle at least in different places. Incidentally, a counterbore of this size was somewhat out of the ordinary, as I had never seen but one counterbore of this size in the factory before."

The action was tried before *Brown*, J. Material evidence and requests by the defendant for rulings are described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in its favor. The motion was denied. The jury found for the plaintiff in the sum of $3,400 and, before the recording of the verdict, the judge, with the consent of the jury, reserved leave "to enter a verdict for the defendant, if, upon the exceptions taken or the question of law reserved, this court or the Supreme Judicial Court should decide that such verdict for the defendant should have been entered."

The defendant alleged exceptions.

*J. P. Kirby*, for the defendant.

*W. G. McKechnie*, for the plaintiff.

SANDERSON, J. In this action the plaintiff seeks to recover damages for an injury sustained October 27, 1921, while at work for the defendant. He was first employed by it in the latter part of 1915. From December 28, 1917,

to March 1, 1920, the railroad was subject to Federal control, during which time except for a brief period of absence he was an employee of the Federal government.   He again became an employee of the defendant on the latter date and the trial judge rightly ruled that his contract of employment began when the defendant resumed operation of the railroad. *Missouri Pacific Railroad* v. *Ault*, 256 U. S. 554, 557.

It was a part of the plaintiff's duty during the entire course of his employment to remove, sharpen, and replace blades set in counterbores, used to enlarge holes in metal.   These blades are of highly tempered steel, fastened in the end of the counterbore by means of shims or wedges.   The plaintiff testified that on the day of the accident, while he was driving a blade into its shank with a hard steel hammer, a chip flew from the blade into his finger, causing the injury which is the basis of this action; that because the blade was being fastened in place by means of shims, it was necessary to strike the blade itself with the hammer; that during the entire period since March 1, 1920, the defendant furnished hard hammers only; that there had been a time previous to or during a part of the period of Federal control when soft or Babbitt hammers were used which had either worn out or disappeared and had not been replaced; that before the defendant resumed control, he had asked the foreman at least three times for such hammers; that the defendant had never supplied tapering wedges to fasten the blades, but that shims were used for this purpose which the employee obtained wherever he could pick them up, though generally he used those that came with the tool when it was sent to be sharpened; that during the six years of his employment no blade had chipped, to his knowledge.

There was testimony tending to prove that it was safer to use tapering wedges instead of shims to fasten these blades; that when wedges were used the hammer blows would fall largely, if not altogether, on the wedge, while the use of shims made it necessary to strike the blade itself; that a hard hammer is not a safe instrument to use in striking the blade because of the danger of chipping the steel which the use of a soft hammer would obviate.

One of the specifications of negligence was that the blade

was improperly hardened and thus made brittle. The evidence does not justify a finding of negligence on this ground. All blades were required to be made of hardened steel. This one had become dull from use and upon the evidence the mere fact of chipping did not prove that it was defective. Moreover it did not appear that the defendant manufactured it, or could have discovered by reasonable inspection the degree to which it was hardened. *Harnois* v. *Cutting,* 174 Mass. 398. *Saxe* v. *Walworth Manuf. Co.* 191 Mass. 338. For these reasons the defendant's requests that "There is no evidence sufficient to warrant the jury in finding:. . . That any defect in the hardening of this blade could have been discovered by any reasonably careful inspection of the same" and that "There is no evidence sufficient to warrant the jury in finding: . . . That the defendant was negligent in failing to discover that this blade was improperly hardened" should have been given.

The trial judge ruled that there was no duty to furnish any different tools from those which were used on March 1, 1920, provided the danger of using those furnished was obvious and appreciated by the plaintiff. The plaintiff was an experienced tool sharpener. He had used both hard and soft hammers and was aware that the blades were made of high speed hardened steel and that there was danger of chipping the blades if they were struck with a hard steel hammer. Because of his knowledge and experience in this particular work, the dangers, if any, of using shims instead of wedges, and hard hammers instead of soft, were known to him. Requests for soft hammers made during the period of Federal control cannot affect the plaintiff's rights in this case. In these circumstances the defendant owed no duty to the plaintiff to supply soft hammers for his use, and its requests to that effect should have been given. *Wolfe* v. *New Bedford Cordage Co.* 189 Mass. 591. *Miszoian* v. *Taft,* 206 Mass. 227. *Lemieux* v. *Boston & Maine Railroad,* 219 Mass. 399. *Ashton* v. *Boston & Maine Railroad,* 222 Mass. 65. *Wood* v. *Danas,* 230 Mass. 587. There is nothing in the conclusion here reached inconsistent with *Jellow* v. *Fore River Ship Building Co.* 201 Mass. 464, and *Anderson* v. *Marrinan,* 202 Mass. 193.

There was insufficient evidence to warrant a finding of negligence on any ground alleged and the defendant's motion for a directed verdict should have been allowed. In accordance with the terms of the leave reserved, a verdict is to be entered for the defendant.

*So ordered.*