LEWIS CARY *vs.* STREETER & SONS CO.

Worcester.     September 23, 1929. — January 28, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Negligence*, Employer's liability.

At the trial of an action of tort for personal injuries received by an employee of the defendant, there was evidence that the defendant was engaged in building new land out into a river by dumping gravel; that the material was brought to the new land by a truck, the tailboard of which was hinged at the top, so that the bottom swung out when the front part of the body was raised to dump the load and then swung back when the body was lowered after the load had been discharged; that there was nothing to hold the tailboard from swinging while the body was being raised and lowered, nor any other employee to attend to it; that the plaintiff, an experienced shoveller, was given an ordinary short handled shovel and directed to stand "on the river's slope" and shovel the material into the river as it was dumped "just as fast as a man could work"; that he was not furnished with planks or a shovelling platform; that a long handled shovel was necessary for the work the plaintiff had to do; that, while the plaintiff so was working a few feet from the tailboard of the truck, which had dumped a load containing about twenty-five per cent clay, "more slippery than the gravel," he slipped, dropped the shovel and threw up his hands to save himself from going into the water; that his right hand struck the body of the truck and was injured by the swinging tailboard as it was "coming back"; and that he "received no warning of the dangers of the place or that the load . . . contained clay." The trial judge ordered a verdict for the defendant on the ground that there was no evidence of negligence on the part of the defendant. *Held*, that

(1) It did not appear that the truck or the shovel was unsuitable; or that the truck was operated negligently;

(2) It did not appear that the plaintiff had been instructed to work in a dangerous place, even though it was near the river and no planks or loading platforms were furnished;

(3) The nature of the place and of the material dumped from the truck being obvious to the plaintiff, an experienced shoveller, no duty to warn him of the dangers thereof rested upon the defendant;

(4) There was nothing to show that there was any necessity for warning the plaintiff of the danger attendant upon the swinging tailboard or to furnish another employee to control it;

(5) The defendant was not negligent by reason of his failure to anticipate and guard against the accident;

(6) The verdict properly was ordered for the defendant.

TORT by an employee of the defendant for personal injuries. Writ dated June 14, 1926.

The action was tried in the Superior Court before *Walsh,* J. It appeared that the defendant was not a subscriber under the Rhode Island workmen's compensation act, and that therefore, under the laws of that State, the defendant was not entitled to rely on the defences that the plaintiff was negligent, that his injuries were caused by the negligence of a fellow servant or that the plaintiff had assumed the risk of injury. Material evidence for the plaintiff is stated in the opinion. At the close of his evidence, the judge ordered a verdict for the defendant on the ground that no negligence on the defendant's part had been shown. The plaintiff alleged exceptions.

*F. W. Morrison,* for the plaintiff.

*E. Brown,* for the defendant.

FIELD, J. This is an action of tort for personal injuries alleged to have been sustained by the plaintiff while employed by the defendant. It was tried by a judge and a jury. The judge granted the defendant's motion for a directed verdict, ruling that "the plaintiff had submitted no evidence of negligence on the part of the defendant sufficient to entitle him to present his case to the jury." The plaintiff excepted.

The evidence tended to show the following facts: The defendant was engaged in excavating for the foundations of a proposed mill structure in Woonsocket, Rhode Island, and used the excavated material to build new land out into the edge of the Blackstone River. The "newly built land was carried out into the water from five to nine feet above the water's level." The plaintiff was employed as a shoveller in connection with unloading this material from trucks which "backed up in succession to the river's slope on the newly

made land and dumped their loads upon a forty-five per cent slope." He was "directed to work on the river's slope where the loads of gravel were being dumped." The tailboard of a truck "was hinged at the top and swung out at the bottom as the front end of the loaded body was being raised by the power of the truck," and "after being released" continued to swing out "until the body of the truck had discharged its load and come back again to a level position." The plaintiff would release the tailboard by striking the fastening with his shovel and then, standing on the material discharged from the truck, would push it into the river with a "shovel three feet long, the ordinary short handled round pointed shovel" which was furnished to him for the purpose.

At the time of the accident a truck loaded with material "containing about twenty-five per cent clay," "more slippery than the gravel," had backed up and dumped its load and the plaintiff was standing partly on that material and "just as near as he could to the edge of the river . . . about four feet above the water." He "was behind the left hand corner of the rear of the truck and about three feet from the swinging tailboard." He "started to work just as fast as a man could work," as he had been directed to do, and slipped, dropped his shovel into the water, "threw his hands up to save himself and his right hand struck the body of the truck just as the tailboard was coming back" and his hand was injured by the swinging tailboard. If "he hadn't thrown up his hands he would have gone into the water of the river." There "was nothing to hold the tailboard from swinging while the load was being discharged or while the body of the truck was being brought back to a level position by its own power." The plaintiff was "furnished no planks or shovelling platform or long handled shovels." He testified that he had been a shoveller for twenty-five or thirty years, that "a long handled shovel was needed for the work to which he was assigned," and that "with a long handled shovel he could have worked to one side and further away from the steep slope." He "received no warning of the dangers of the place or that the load he was injured in helping unload contained clay." No "fellow

workman was furnished to attend to the swinging tail-board."

Considered in its aspect most favorable to the plaintiff, the evidence does not show negligence on the part of the defendant.

There was no evidence that the truck was defective or unsuitable for the purpose for which it was used or that it was operated negligently. The swinging of the tailboard was an ordinary incident of unloading. Nor could it have been found that the defendant was negligent in failing to furnish planks or loading platforms or in furnishing the plaintiff with a short handled shovel instead of a long handled one. It does not appear that it was not reasonably safe to shovel the material dumped from the trucks without the use of planks or loading platforms. The evidence, including the testimony of the plaintiff as to the need and advantage of a long handled shovel, does not show that the shovel furnished was defective or that it was not fit and proper, even though a long handled shovel would have been more suitable or less dangerous. *Wolfe* v. *New Bedford Cordage Co.* 189 Mass. 591, 592. *Wilson* v. *Alexander*, 230 Mass. 242, 244.

The plaintiff was an experienced shoveller. It does not appear that the dangers of the place in which he was set to work or the nature of the material in the load in question was not open and obvious to his inspection or that there was any reason to suppose that he needed any warning thereof. Hence no duty to give such warning is shown. *Ray* v. *Western Union Telegraph Co.* 258 Mass. 303, 305, and cases cited. *Walsh* v. *Turner Centre Dairying Association*, 223 Mass. 386. No duty to warn arose from the general directions to the plaintiff to work "on the river's slope" and "just as fast as a man could work." They were not instructions to him to do his work in a manner exposing him to danger, as in *Byrne* v. *Learnard*, 191 Mass. 269. His situation was unlike that of a shoveller directed specifically to work in a place where a bank of earth was likely to fall upon him. See *Chiappini* v. *Fitzgerald*, 191 Mass. 598.

There is nothing in the case to indicate that the plaintiff

needed any warning of the danger of putting his hand between the bottom of the truck body and the swinging tailboard. The defendant's failure to anticipate the possibility that an experienced employee, by reason of his voluntary or involuntary act, might have his hand caught between the tailboard and the truck body, and to take care to prevent it, cannot be regarded as negligence. See *Cote* v. *D. W. Pingree Co.* 205 Mass. 286. It could not have been found that it was the duty of the defendant to furnish a "fellow workman," other than the operator of the truck, "to attend to the swinging tailboard" and to control, guard or warn against it.

It is unnecessary to consider other arguments advanced by the defendant in support of a directed verdict.

*Exceptions overruled.*