## JOSEPH J. CRONAN *vs.* FRANCIS H. ARMITAGE.

Essex.    April 4, 1933. — March 26, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Negligence,* Employer's liability: in use of electricity, dangerous place in which to work, unsafe appliances, assumption of risk. *Practice, Civil,* Requests, rulings, and instructions; Charge to jury; Exceptions: whether error harmful.

At the trial of an action for personal injuries by one employed as a helper by the defendant, an electrical contractor who was not a subscriber under the workmen's compensation act, there was evidence that the plaintiff was directed by the defendant's journeyman, who was in charge of work being done by the defendant in premises of a third person, to remove from a meter board three fuse blocks, to each of which was attached an insulated wire carrying five hundred fifty volts; that the wires came from a metal cable held by a single clip at the top of the wall and ended just above the fuse blocks; that proper workmanship required that the cable be fastened to the wall by clips closer to the fuse blocks; that the plaintiff, upon inquiring of the journeyman whether to shut off the power before commencing his task, was told not to do so; that it was customary to do so when such work was being performed; that only a brief period would have been required for the performance of the plaintiff's task; that, a current of five hundred fifty volts being dangerous to life and limb, the plaintiff should not have been directed to work on a live wire carrying such a current; and that, after cutting the three wires, which exposed a live center in each, the plaintiff was attempting to turn the ends out of the way with his bare hand when the cable swayed, the ends of two of the wires made contact with the plaintiff's hand and he suffered a severe injury. In one count of the declaration, the plaintiff alleged negligence of the defendant by reason of his failure to furnish the plaintiff with a safe place in which to work, and in another count negligence of the defendant in that he permitted a dangerous current of electricity to pass through electrical apparatus on which the plaintiff was working after the plaintiff had asked that the current be shut off. *Held,* that

(1) The defendant owed the plaintiff a duty to furnish him with a reasonably safe place in which to work even though the place of work was in premises not owned by the defendant;

(2) The conditions under which work of the kind which the plaintiff was directed to do was customarily performed properly were considered on the issue of the defendant's negligence;

(3) A finding for the plaintiff was warranted on each of the counts above described.

Further evidence at the trial above described, that the plaintiff had no rubber gloves and was not furnished with any by the defendant; that one working on live wires would be protected if he wore them; and that it was customary for electrical contractors to furnish them to their employees when required, warranted a finding for the plaintiff on another count of the declaration charging the defendant with negligence in that he failed to provide the plaintiff with safe and adequate appliances for his work.

Discussion by Rugg, C.J., of the principles of "contractual" and noncontractual assumption of risk in the law governing the liability of employers, not subscribers under the workmen's compensation act, for personal injuries sustained by their employees.

In the action above described, it *was stated* that requests by the defendant for rulings, to the effect that the plaintiff assumed all risk connected with his employment and that, if he was injured by means of an obvious risk, he could not recover, were not rightly phrased to direct the attention of the trial judge to the distinction between "contractual" and noncontractual assumption of risk.

It was proper to refuse such requests because they were inapplicable to the evidence and the issues tried; the plaintiff's injuries not having arisen from causes in existence at the time when his contract of employment was made with the defendant, nor on the premises of the defendant, nor by reason of a manifest course of business established by the defendant, the principle of "contractual" assumption of risk was not applicable, and the defence of noncontractual assumption of risk was not available to the defendant under G. L. (Ter. Ed.) c. 152, § 66.

At the trial of an action against one, who was not a subscriber under the workmen's compensation act, for personal injuries sustained by one of the defendant's employees in the course of his work, comments by the trial judge, in his charge to the jury, upon the beneficent design and effect of the workmen's compensation act, which was characterized as "highly desirable humanitarian legislation," and a statement that it was regarded as "matter of public policy" that the benefits of the act be available to employees so far as accepted by employers, were irrelevant and prejudicial to the defendant; but an exception by the defendant to such portion of the charge was overruled in view of a further instruction, given by the judge to the jury after the exception was noted, to disregard what he had said about the act and to decide the action upon the law applicable thereto.

TORT.    Writ dated May 18, 1927.

The first three counts of the declaration are described in the opinion.    By amendment, a fourth count was added

in which it was alleged that the defendant was negligent in that he failed to warn the plaintiff of the dangers of his work.

The action was tried in the Superior Court before *Macleod*, J. Material evidence and exceptions saved by the defendant are described in the opinion. The judge ordered a verdict for the defendant on the fourth count of the amended declaration. There was a verdict for the plaintiff upon each of the other counts in the sum of $6,500. The defendant alleged exceptions.

*G. Karelitz*, for the defendant.

*S. H. Donnell*, for the plaintiff.

RUGG, C.J. This is an action of tort brought to recover compensation for personal injuries received on February 7, 1927, by the plaintiff in the course of his employment by the defendant. The case was submitted to the jury on three counts. Allegations common to all counts are that the plaintiff was employed as a helper or assistant to a journeyman electrician and received injuries through the negligence of his employer, an electrical contractor, who was not a subscriber under the workmen's compensation act. The negligence of the defendant alleged in count one is that he knowingly put the plaintiff at work in an unsafe and dangerous place, in count two that he failed to provide the plaintiff with safe and adequate tools and appliances for his work, and in count three that he permitted a dangerous current of electricity to pass through wiring and electrical equipment on which the plaintiff was working, although the latter had asked that it be shut off. The defendant in his answer pleaded general denial, contributory negligence and assumption of risk by the plaintiff.

There was evidence tending to show these facts: The defendant was removing under contract certain electrical appliances from one building to another in Haverhill. The work was being done under the general supervision of the defendant, although he was absent on the afternoon of the injury. His only employees at the place of the injury were one Whitman, a journeyman electrician, and the plaintiff as helper. The plaintiff had been employed by various

people in electrical work for about six years, had taken a part time course in electricity in the Wentworth Institute, and had failed to pass the State examinations for a license as journeyman. In the absence of the defendant, Whitman was in charge, doing the work with the aid of the plaintiff, to whom he gave directions. On the wall of a corridor in the building was a meter board high above the floor. A metal cable, that could be coiled, containing three insulated wires, was held by a single clip at the top of the wall and then came down to the meter board and stopped just above the fuse blocks. One of each of the three wires went into each of the three fuse blocks. Whitman told the plaintiff to remove the three fuse blocks from the board. The plaintiff said: "Will I shut the power?" Whitman answered: "No." The plaintiff knew that five hundred and fifty volts were in the wires to be cut and would give a shock, but did not know that it would be dangerous to life and limb. He was given no warning of the danger. He had no rubber gloves. The defendant had no such gloves. Standing on a chair placed on a bench, the plaintiff cut off each of the three wires close to the fuse block. The wires, although insulated, when cut off exposed the center, which was alive. The cable with the three wires thus exposed at the bottom was left dangling and the ends pointed outward. The plaintiff undertook to turn the ends in and out of the way, as required, using his bare left hand. He turned one wire in and then tried to turn in a second. As he did this the cable swayed and apparently resumed its original coil, and two ends of wires came into the palm of the plaintiff's left hand a few inches apart. An arc formed; that is, the current went from one wire to the other through the hand. Severe injuries resulted. Turning off the switch to make these wires dead would have turned off the currents from other tenants in the build.ng. A current of five hundred and fifty volts of electricity was dangerous to life and limb. It was the custom in Haverhill at the time to turn off the switch to do such work and, if necessary, to do it at the noon lunch hour or after closing hours when the switch could be turned

off without interfering with tenants. Removal of the fuse blocks would ordinarily take about two minutes. There was expert testimony to the effect that proper workmanship required that the current on these wires be turned off before the plaintiff worked on them, because otherwise there would be danger; that no one should be allowed to work on such live wires without being warned of the risks; that one working on live wires would be protected if he wore rubber gloves; that neither journeymen nor helpers carried rubber gloves in their kits; that an electrical contractor customarily carried a pair of rubber gloves and furnished them to the employee in the occasional instances where required; that because of the danger a helper should not have been directed to work on a live wire carrying five hundred and fifty volts of electricity; that proper workmanship and the building code of Haverhill required that the metal cable should have been fastened to the wall by clips closer to the fuse blocks than it was, and that if this had been done there would have been less chance for the exposed ends of the live wires to make a contact through the hand of the plaintiff. Seemingly no exception was taken to the evidence.

At the close of the evidence and subject to the defendant's exceptions, a motion for a directed verdict in favor of the defendant was denied and certain requests for instructions were denied. The defendant excepted to portions of the charge. Separate verdicts for the same sum were returned in favor of the plaintiff on each of the three counts.

There was no error in the denial of the motion for a directed verdict. Since the defendant was not an "insured person" under the workmen's compensation act, the defences were not open to him that the injuries of the plaintiff were caused by his own negligence, or by the negligence of a fellow servant, or that the plaintiff had "assumed the risk of the injury." G. L. (Ter. Ed.) c. 152, §§ 1 (6), 66. The only defence open to him was that his negligence did not cause the injuries of the plaintiff. Negligence in this connection means the failure to discharge some obligation

or to fulfill a duty owed by the defendant to the plaintiff. It is the doing or omitting to do an act in violation of a legal duty or obligation. There can be no negligence when there is no duty. *Minor* v. *Sharon,* 112 Mass. 477, 487. *Bernabeo* v. *Kaulback,* 226 Mass. 128, 131. *Bergeron* v. *Forest,* 233 Mass. 392, 399. *Seaboard Air Line Railway* v. *Horton,* 233 U. S. 492, 504.

The injuries to the plaintiff did not occur upon the premises of the defendant. They did not arise from an established and manifest method of doing business adopted by the defendant. The defendant as employer carrying out his contract within buildings owned by others still owed to the plaintiff as his employee the duty to furnish a reasonably safe place in which to work. This was a duty personal to the employer and could not be avoided by delegation to another. *DeMarco* v. *Pease,* 253 Mass. 499, 506. *Garber* v. *Levine,* 250 Mass. 485. *McGonigle* v. *O'Neill,* 240 Mass. 262. *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188, 192. *Hopkins* v. *O'Leary,* 176 Mass. 258, 264. There was ample evidence that a current of electricity such as here was shown in the wires was dangerous to life and limb, that it was the custom to do such work as that performed by the plaintiff only after the current was shut off, and that to take this precaution and complete the work would require only a brief time. The peculiar danger of handling wires charged with electricity is a factor to be weighed in passing upon the conduct of the defendant. Customary conditions under which work of that nature was usually done was proper for consideration on the issue of the negligence of the defendant. *McCrea* v. *Beverly Gas & Electric Co.* 216 Mass. 495, 498. *Hecht* v. *Boston Wharf Co.* 220 Mass. 397, 405, and cases collected. There was sufficient evidence to require submission of the case to the jury on the first and third counts.

The evidence respecting the protection afforded by the use of rubber gloves in doing the work of the plaintiff and that according to the custom of the trade the employer provided such gloves required submission of the second count to the jury. *McPhail* v. *Boston & Maine Railroad,*

280 Mass. 113. Cases like *Ray* v. *Western Union Telegraph Co.* 258 Mass. 303, 305, *Cary* v. *Streeter & Sons Co.* 270 Mass. 175, and *Walsh* v. *Boston & Maine Railroad,* 284 Mass. 250, where the plaintiff was experienced and cognizant of every particular of the danger to be avoided and the risk was obvious, are distinguishable from the case at bar, where it could have been found that the plaintiff did not know and comprehend the peril of his work and that it was not obvious. The plaintiff was a helper and not a journeyman.

There was no error in the denial of the defendant's requests for rulings to the effect that the plaintiff assumed all risk connected with his employment and that, if he was injured by means of an obvious risk, he could not recover. An employer owes no duty to one entering his employment to alter the obvious conditions of his premises or to change the manifest methods of conducting his business, even though safer ones might be devised. Therefore, there is no negligence in continuing them. The provisions of G. L. (Ter. Ed.) c. 152, § 66, do not affect this principle of law. The reason is that this principle was never a matter of defence. It was a part of the plaintiff's case to show the duty resting upon the defendant in order to afford basis for showing a breach of that duty. *Wood* v. *Danas,* 230 Mass. 587. *Ashton* v. *Boston & Maine Railroad,* 222 Mass. 65, 70. *Sylvain* v. *Boston & Maine Railroad,* 280 Mass. 503, 505. This principle has sometimes been called the contractual assumption of risk. It is properly described as a limitation upon the duty of an employer. It is a measure by which to determine his negligence. It is a part of the plaintiff's case to make out the negligence of the defendant and, if on the whole no negligence appears, there can be no recovery. This principle has no relation to risks which spring into existence subsequently to the contract of employment. Prior to the workmen's compensation act, it was often an issue whether an employee, knowing and appreciating such risks, had voluntarily assumed them. That assumption of risk was an affirmative defence and must be pleaded. The burden of proving it rested upon the de-

fendant. That assumption of risk as a defence was abolished by the workmen's compensation act and is not open to the defendant. *Wood* v. *Danas*, 230 Mass. 587, where the subject is discussed with fullness by Carroll, J.

The requests of the defendant were not rightly phrased to direct the attention of the trial judge to the distinction between contractual and noncontractual assumption of risk. But passing that point, the requests were rightly refused because inapplicable to the evidence and the issues tried. It would only have been confusing to say anything to the jury on that subject, because there was no ground for finding any so called contractual assumption of risk. The injuries to the plaintiff did not arise from causes in existence at the time his contract of employment was made with the defendant. They did not occur on the premises of his employer but on those of a third person. They were not caused by a manifest course of business established by the defendant. For aught that appears, this was the first time that there had been necessity in the defendant's business for disconnecting from a meter board wires charged with a dangerous current of electricity. There was no evidence that, if he had done such work before, precautions as to shutting off the electricity or using rubber gloves had not been employed. The record is bare of any evidence warranting the application of the principle now suggested by the defendant in support of his requests. There is no basis for invoking the rule followed in *Ashton* v. *Boston & Maine Railroad*, 222 Mass. 65; *Sheridan* v. *Boston & Albany Railroad*, 253 Mass. 446, and similar cases. There was no contractual assumption of risk. *Demaris* v. *Van Leeuwen*, 283 Mass. 169. The familiar principle is that, in a charge to a jury, the law should be correctly stated with sufficient fullness; "but it is hardly of less importance that it should be stated in simple and plain terms so that a jury unskilled in the niceties of legal phraseology may appreciate the direction which is being given to them. Such direction should be adapted to the special circumstances of the case. It is not the whole law of negligence that needs exposition in every case, but only that part of it which is essential to a clear understanding of the

issue which the jury has to determine." *Swadling* v. *Cooper*, [1931] A. C. 1, 10. The refusal to grant these requests was right and did the defendant no harm. *Smith* v. *Commonwealth*, 210 Mass. 259, 262. *Freeman* v. *Robinson*, 238 Mass. 449, 452. *Antokol* v. *Barber*, 248 Mass. 393, 398. The charge was appropriate to the issues and the evidence on this point.

It is not necessary to review further decisions relied on by the defendant.

The charge by way of "preliminary background" contained a disquisition upon the beneficent design and effect of the workmen's compensation act, which was characterized as "highly desirable humanitarian legislation," and stated that it was regarded as "matter of public policy" that its benefits be available to employees so far as accepted by employers. This portion of the charge had no relevancy to the issues to be decided by the jury and was prejudicial to the defendant. *McPhail* v. *Boston & Maine Railroad*, 280 Mass. 113, 120. The defendant excepted to it. Thereupon the trial judge in substance directed the jury to disregard what he had said about the workmen's compensation act and to decide the case on the law governing the case. It must be presumed that these instructions were followed by the jury. *Stricker* v. *Scott*, 283 Mass. 12, 14–15, and cases there collected.

*Exceptions overruled.*