ERNEST M. DRAKE *vs*. BOSTON SAFE DEPOSIT AND TRUST
COMPANY, executor.

Suffolk.    October 10, 1940. — November 25, 1940.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Negligence*, Employer's liability: duty to warn; In cutting timber.
   *Practice, Civil*, Exceptions: what questions open; Ordering verdict.

Although a judge stated to the jury a certain ground for granting a
   motion of the defendant that a verdict be ordered in his favor upon
   the pleadings and all the evidence, the defendant, upon an exception
   by the plaintiff.to the granting of the motion, was not limited to the
   ground stated by the judge: every question of law in defence raised
   by the record was open in this court.
An employee at work cutting down a tree was under no duty to give a
   warning of danger of its falling to a fellow employee who was experi-
   enced in the matter of felling trees.

TORT.    Writ in the Superior Court dated November 15,
1937.

A motion of the defendant that a verdict be ordered for the
defendant "upon the pleadings and upon all the evidence"
was granted by *Burns*, J.    The plaintiff alleged exceptions.

*H. Loewenberg*, (*P. Lipper* with him,) for the plaintiff.

*E. J. Sullivan*, for the defendant.

DOLAN, J.    This is an action of tort to recover for per-
sonal injuries sustained by the plaintiff as a result of the
alleged negligence of one Guerrin.    At the time of the acci-
dent the plaintiff and Guerrin were fellow employees en-
gaged in the work of their employer, Susanna K. Pratt,
who was not a subscriber under the workmen's compensa-
tion act.    The action was brought against her, but during
its pendency she died and the executor of her will appeared
and answered.    The case was tried to a jury, and at the
close of the plaintiff's evidence the defendant's motion for
a directed verdict was allowed by the judge, and the plain-
tiff excepted.

The evidence tended to show the following facts: The plaintiff was employed by David Pratt, as a caretaker on his estate in Middleborough, from 1906 to 1916. David Pratt died in 1916 and the plaintiff was retained by Marion, the widow of David, in the same capacity until her death in 1935. The plaintiff had the use of a cottage on the estate. After the death of Marion the plaintiff was notified by her representative that his services would be terminated on December 1, 1935. In November of that year he talked with Susanna K. Pratt, who had inherited the estate of Marion and who also owned an adjoining property, and told her that he had been so notified, and entered into a contract with her under which he was to remain at $20 a month and to have the free use of the cottage on the Marion Pratt estate, which he was occupying with his family. That "estate" consisted of one hundred fifty acres of land, a mansion house, two cottages and six other buildings. The adjoining estate, also owned by Susanna, included forty to fifty acres of land, a mansion house and six other buildings. There is timber land on both properties. Since the death of Marion, in 1935, neither of these estates has been inhabited, except the two cottages occupied by the plaintiff and Guerrin. Since December, 1935, and down to and including the time of the accident, they were the only persons employed by Susanna on the premises.

The plaintiff's duties as prescribed by Susanna, hereinafter referred to as the deceased, were in part that "he should 'look after Guerrin's work and see that he did it and earned his money,' and pay him his wages, look after the estates, 'go through the eighteen-room Marion Pratt house' twice a day (on account of burglaries which had taken place in the vicinity); to go down to the yard of her own estate and over the property and see that everything was all right." Various other duties of the plaintiff having to do with the upkeep of the properties need not be recited in detail.

The deceased visited the estates two or three times a week, and on these occasions the plaintiff would report to her and receive her instructions. Early in December, 1936,

the plaintiff and the deceased discussed the condition of the woods with reference to dead timber. Upon being informed by the plaintiff that there was "quite a patch," she told him to have it cut. "As he and Guerrin could not do this alone," she instructed him to hire some woodchoppers. He hired two woodchoppers from one Huntley, who agreed with the deceased to purchase timber and wood from her. She told Huntley that the plaintiff would show him the old road over which the timber and wood would have to be hauled. On December 28, 1936, the plaintiff talked with the deceased, who said to him: "Go down and get Guerrin tomorrow and show him where to cut out the 'old road' (through which the wood was to be hauled). The plaintiff told her he would do so. She told him that Guerrin was down in the woods where he was cutting out the wood. She also told him 'to watch out he is earning his money.'" On the following day the plaintiff went into the woods to find Guerrin and give him instructions about cutting out the old road. The plaintiff was carrying an axe "because he 'was going to help cut out the road.'" When he found Guerrin, the latter was cutting down a dead oak tree "'forty or fifty' feet high." Guerrin had wedges in the tree. The plaintiff spoke to him and he answered back. It does not appear what was said. Guerrin kept on working "Banging away at the wedges." The plaintiff stood about twenty feet away from the tree for two or three minutes. The tree then fell striking him on the head. He was familiar with the way trees are cut; he had cut down quite a few during the years he worked for the Pratts; he knew it was customary to saw trees down and, if the saw binds, to drive in wedges. He knew that the tree that Guerrin was cutting down was a dead tree; he thought it might break off. He couldn't tell just how the tree would fall. He saw the tree fall, saw it coming, and started away, but "the tree caught" him. The defendant offered no evidence.

In directing the jury to return a verdict for the defendant the judge addressed them, stating that he had allowed the defendant's motion, and that though it was not necessary

he thought he should tell the jury why he was doing so. He then stated, in effect, that the workmen's compensation act does not require any one to insure at his peril, but that it is provided in that act that, if the employer is not so insured, it shall not be a defence that the injury was caused by the negligence of a fellow servant, or that the employee had assumed the risk of the injury. The judge also said that this provision does not apply in cases of domestic servants and farm laborers and that he felt, on the evidence, that the plaintiff was a domestic servant and therefore the defences to which he had referred would be open; but that "if there was any negligence at all here, which would be a question for . . . [the jury] and not for . . . [him (the judge)], . . . it would be the negligence of a fellow servant." A stipulation was entered into by the parties that in the event the ruling of the court is erroneous, judgment is to be entered in favor of the plaintiff, in a certain sum.

The statement of the judge to the jury that it was not necessary for him to tell them why he allowed the defendant's motion for a directed verdict was correct. The defendant's motion was based "upon all the evidence." It raised every defence that was open to the defendant on the evidence as matter of law. The defendant was not bound by the reasons assigned by the judge.

We do not consider whether the reasons assigned by the judge for his action were correct, since we deem it unnecessary to decide whether the character of the employment of the plaintiff in the service of the deceased was that of farm laborer or domestic servant. For the purposes of the case we assume, without deciding, that he was neither, and that, since the deceased was not insured under the workmen's compensation act, the only defence open is that there was no evidence of negligence on the part of Guerrin. See *Ray* v. *Western Union Telegraph Co.* 258 Mass. 303, 305.

It is settled that an employer is "under no duty to warn of dangers open and obvious to the ordinary inspection of an employee when there is no reason to suppose that there is any need of such warning." *Ray* v. *Western Union Telegraph Co.* 258 Mass. 303, 305. *Kenneally* v. *Oceanic Steam*

*Navigation Co. Ltd.* 230 Mass. 446, 448. *Murphy* v. *Furness-Withy & Co. Ltd.* 259 Mass. 394, 396. *Cary* v. *Streeter & Sons Co.* 270 Mass. 175, 178. *Shea* v. *Frangioso*, 281 Mass. 412, 416. Where a condition is obvious to an ordinarily intelligent person there is no duty on the part of any one to warn of that condition. *Sterns* v. *Highland Hotel Co.*, *ante*, 90, 96, and cases cited. *Lemoine* v. *Springfield Hockey Association, Inc.*, *ante*, 102, 104, and cases cited.

In the instant case it seems clear that the danger was one that was open and obvious to the plaintiff. Assuming, without intimating, that it would not be open and obvious to any ordinarily intelligent person, the plaintiff was a person experienced in the matter of felling trees. *Kenneally* v. *Oceanic Steam Navigation Co. Ltd.* 230 Mass. 446, 448. He knew that in the process of sawing down the tree there was a danger that it might break off, and also that there was no way of telling how the tree would fall. He did not, however, see fit to attempt to remove himself from a place of plainly visible danger to a place of safety until it was too late. In these circumstances we think it cannot be said that there was any duty on the part of Guerrin to warn him, if, in fact, he did not do so. It may be observed that the evidence does not show whether Guerrin did in fact warn him or failed to do so.

Since the evidence as matter of law would not warrant a finding of negligence on the part of Guerrin, there was no error in the action of the judge in directing the jury to return a verdict for the defendant.

*Exceptions overruled.*